724 F.Supp. 224 (1989)
Thomas A. MONAHAN, Plaintiff,
v.
PAINE WEBBER GROUP, INC., d/b/a PaineWebber, Inc., formerly d/b/a Paine, Webber, Jackson & Curtis, Inc., and Robert J. Hume, III, Defendants.
No. 88 Civ. 1723(MEL).
United States District Court, S.D. New York.
November 2, 1989.
*225 Chapman, Moran, Hubbard & Zimmerman, New York City, for plaintiff; of counsel John Haven Chapman.
Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants; of counsel Max Gitter, Mary E. Crawley.
LASKER, District Judge.
Thomas A. Monahan is one of a group of former employees who sued Paine Webber Group, Inc. ("Paine Webber") under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 (1982). In an earlier opinion, the RICO complaint was dismissed for failure to state a cause of action and, in the alternative, on the grounds that the claims were barred as res judicata. Cullen v. Paine Webber Group, Inc., 689 F.Supp. 269 (S.D. N.Y.1988).
Monahan instituted this action against Paine Webber and its Vice President and Legal Counsel Robert J. Hume, III (collectively "defendants") while the Cullen suit was pending, alleging that defendants failed to renew his license to sell securities in Ohio thereby exposing him to penalties including loss of his license in Ohio and other states.
Defendants move to dismiss and/or for summary judgment, asserting that 1) Monahan's complaint fails to state a claim upon which relief can be granted; 2) Monahan's claims are barred under the doctrine of res judicata by a 1986 arbitration decision and the decision of this court in Cullen, 689 F.Supp. at 269; and 3) Monahan's claims must be pursued, if at all, in arbitration.
In his current complaint, Monahan alleges common law fraud, negligent misrepresentation, intentional interference with prospective economic advantage and unfair competition against Paine Webber and Hume, as well as legal malpractice against Hume. However, because Monahan agrees that his first four claims must be stayed pending arbitration, it is necessary only to address the legal malpractice claim. The motion for summary judgment on res judicata grounds is denied. The merits of defendants' motion to dismiss for failure to state a claim are not addressed because the motion to stay the action pending arbitration is granted.

I.
Monahan alleges that when Paine Webber offered him a position as a broker, it represented that it would take whatever *226 steps were necessary to assure his being licensed to sell securities throughout the United States, including in Ohio. As it turned out, Paine Webber did not apply to license Monahan in Ohio until after he had inadvertently executed an unlicensed sale of securities to a client there.
As a result of the unlicensed sale, the state instituted a proceeding which resulted in an order barring Monahan from selling securities in Ohio. Monahan alleges that the order, which made it difficult for him to obtain licenses to sell securities in other states, was issued as a result of mismanagement by Hume and Paine Webber and he has presented evidence to support this allegation.

II.
The defendants maintain that an earlier arbitration decision prevents Monahan from bringing this action. On April 30, 1985, Paine Webber initiated arbitration proceedings against Monahan and two other employees, Brett Vieillard and Thomas P. Cullen, on an unrelated matter: money allegedly due for losses charged to their deficit accounts and for advances made to them by Paine Webber. Monahan and the others asserted a number of defenses and counterclaims. In a decision dated April 30, 1986, the arbitrator awarded Paine Webber the sum demanded for Monahan's outstanding deficit account. The Supreme Court of New York confirmed the arbitrator's award on July 8, 1986. However, Monahan asserts that he did not and could not have discovered the documents underlying his current claims in August of 1986 and therefore the claims could not have been raised in the April 1986 arbitration.[1] Defendants also argue that this court's decision in Cullen bars Monahan's current claims. However, because our decision in Cullen was based on the res judicata effect of the 1986 arbitration, any claim that could not have been raised in that arbitration would not be barred by Cullen. 689 F.Supp. at 282-83.
Arbitration proceedings are given res judicata effect in a later suit if the earlier proceeding involved: 1) an identity of parties, 2) an identity of the cause of action, and 3) a full and fair opportunity to litigate this matter.
Defendants argue that "[Monahan's] present claims are barred by the doctrine of res judicata because he arbitrated the transactions he now seeks to litigate," (emphasis in original).[2] Although defendants acknowledge that Monahan's counterclaims before the arbitrators did not include the claims made here, Cullen, 689 F.Supp. at 278-79, they assert that Monahan waived the right to make those claims in the future because he could have made them at that time. As defendants correctly argue, "[n]ew legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata." In re Teltronics Serv., Inc., 762 F.2d 185, 193 (2d Cir.1985). The arbitration is res judicata "not only as to what was pleaded, but also as to what could have been pleaded." Id.
However, Monahan's claims are not merely based on a new legal theory, but on what he claims are newly discovered facts that he could not have pleaded at the time of the arbitration. In the context of a motion for summary judgment, "all reasonable inferences [must be drawn] in favor of the party against whom summary judgment is sought." Murray v. National Broadcasting Co., 844 F.2d 988, 992 (2d Cir.), cert. denied, ___ U.S. ___, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988). Summary judgment cannot be granted here on res judicata grounds because we must infer that Monahan could not have raised his current claims in the 1986 arbitration.

*227 III.
Before beginning his employment at Paine Webber, Monahan signed a Uniform Application for Securities Industries Registration which contained the following paragraph:
I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register....[3]
Rule 347 of the New York Stock Exchange, one of the organizations with which Monahan was registered and of which Paine Webber is a member, provides:
Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules.[4]
There can be no doubt that the dispute over Paine Webber's failure to obtain an Ohio license for Monahan, its approval of his unlicensed sale of securities, and its failure to inform him of the Ohio proceedings against him arose out of his employment at Paine Webber. As was stated in Cullen, Monahan's Uniform Application for Securities Industries Registration created a binding agreement between Paine Webber and Monahan to arbitrate disputes arising out of Monahan's employment. 689 F.Supp. at 282. Defendants argue that Monahan should be compelled to submit his claims to arbitration pursuant to this agreement. Monahan acknowledges that his other causes of action must be stayed pending arbitration, but contends that arbitrators are not competent to determine his claim of legal malpractice against defendant Hume.
Monahan cites Disciplinary Rule 6-102 of the Model Code of Professional Responsibility for the principle that a lawyer cannot invoke an arbitration provision against his client to limit his malpractice liability. The Rule states: "A lawyer shall not attempt to exonerate himself from or limit his liability to his client for his personal malpractice." Model Code of Professional Responsibility DR 6-102 (1980). However, no authority has been cited to support Monahan's interpretation of Rule 6-102 as forbidding the enforcement of an agreement to arbitrate. Moreover, as defendants point out, New York courts have referred certain malpractice claims to arbitration. See, e.g., Brillo v. Neumark, 134 Misc.2d 152, 509 N.Y.S.2d 758 (White Plains City Ct.1986) (counterclaim for legal malpractice referred to arbitration panel).
Given the absence of support for Monahan's assertion that malpractice claims are immune from arbitration, the clear contractual obligation to arbitrate, and the strong federal policy in favor of the enforcement of arbitration agreements, the defendants' motion for a stay is granted.
Monahan's claims are stayed pending arbitration in accordance with the procedures of the New York Stock Exchange.
It is so ordered.
NOTES
[1] Plaintiff's Opposition to Defendants' Motion to Dismiss and/or for Summary Judgment (November 4, 1988), Exhibit A, Affidavit of Thomas A. Monahan, dated November 4, 1988, at ¶ 16.
[2] Defendants' Memorandum in Support of Their Motion to Dismiss and/or for Summary Judgment, dated October 3, 1988, at 20.
[3] Cullen v. Paine Webber Group, Inc., 689 F.Supp. 269 (S.D.N.Y.1988), Affidavit of Max Gitter in Support of Defendants' Motion to Dismiss or for Summary Judgment ("Gitter Affidavit") (July 23, 1987), Exhibit A-3, Uniform Application for Securities Industries Registration, dated August 1, 1983, at 4, ¶ 5.
[4] Gitter Affidavit, Exhibit B, New York Stock Exchange Guide, dated November 1985, at ¶ 2347.