McGUIRE, CORNWELL & BLAKEY, Cornwell & Blakey, G. Robert Blakey, F. Kelly Smith and Greg A. Walker, Petitioners,

v.

Guy GRIDER, Respondent.

Civ. A. No. 91–B–540.

United States District Court, D. Colorado.

June 18, 1991.

Robert S. Treece, Scott T. Erickson, Hall & Evans, Denver, Colo., for petitioners.

Guy Grider, Daniel J. Gamino, Daniel J. Gamino & Associates, P.C., Oklahoma City, Okl., for respondent.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BABCOCK, District Judge.

A trial to court on a petition to compel arbitration and to stay state court proceedings was held June 11, 1991. For the reasons set forth below, I grant the petition.

### I. BACKGROUND

Petitioners filed this action to compel arbitration and to stay a pending state court proceeding. Respondent Guy Grider (Grider) moved to dismiss. This motion was deemed an answer to the petition. On June 11, 1991, Grider waived his right to a jury trial and the parties agreed to try the entire matter before me on that day. Below are my findings of fact and conclusions of law.

### II. FINDINGS OF FACT

In early 1986, Grider retained petitioner McGuire, Cornwell & Blakey (MCB), a Colo-

rado law firm, to prosecute claims arising out of Grider's investment in various oil and gas ventures. On February 10, 1986, Grider signed a fee agreement with MCB. Petitioner's Exhibit 2 (the fee agreement).

The fee agreement was modified by letter dated March 4, 1986. Petitioners' Exhibit 3 (the modified fee agreement). Grider signed the modified fee agreement on March 19, 1986.

Both the fee agreement and the modified fee agreement contain the following provisions:

Please review this letter, and if you find it acceptable, acknowledge your agreement in the space provided and return it to me. By signing this letter, you agree that this writing represents our entire agreement and that there are no oral or written representations or agreements other than those contained in this agreement.

You and MCB agree to submit any fee disputes between us and claims by you regarding MCB's handling of your matter for binding resolution by the Legal Fees Arbitration Committee of the Colorado Bar Association; except that this does not bar MCB from collecting amounts due to it in other ways, including litigation.

Grider is a successful and sophisticated businessman. He read the fee agreements and understood the arbitration clause contained in those agreements. At all relevant times he was represented by an Oklahoma attorney and had the opportunity to have that attorney review the fee agreements. Petitioners never misled Grider as to the effect of the arbitration clause. However, petitioners never specifically discussed the arbitration clause with Grider while negotiating the fee agreements.

When Grider retained MCB his Oklahoma attorney was prosecuting for him an action in Oklahoma state court. In September, 1986, Grider dismissed that action without prejudice and filed, through MCB, a suit in the United States District Court for the Western District of Oklahoma (the RICO case). In that action, Grider assert-

ed RICO, federal antitrust, and pendent state law claims. Some of the state law claims had been asserted in the Oklahoma state court case.

The federal district court dismissed the RICO case in April, 1987. The federal claims were dismissed for failure to state claims on which relief could be granted and the pendent state law claims were dismissed for lack of jurisdiction. The Tenth Circuit affirmed. *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147 (10th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989).

In October, 1989, Grider, through counsel other than MCB, filed a case in Oklahoma state court reasserting his state law claims. In January, 1990, the state court entered summary judgment against Grider based on the statute of limitations. Grider's appeal of that dismissal is pending before the Oklahoma Supreme Court.

In November, 1989, petitioner Cornwell & Blakey, the successor to MCB, attempted to commence an arbitration proceeding to recover outstanding legal fees allegedly owed by Grider for legal services rendered in the RICO case. Grider refused.

Grider filed suit in April, 1990 against petitioners and others in Oklahoma state court (the malpractice case). There Grider alleges malpractice, breach of fiduciary duty, and that excessive fees were charged. Grider refuses to have the claims asserted in that pending case resolved through arbitration.

## III. CONCLUSIONS OF LAW

Petitioners seek to compel arbitration under section 4 of the Federal Arbitration Act (FAA), 9 U.S.C. § 4. It is uncontested that the fee agreements evidence a transaction involving interstate commerce. *See* 9 U.S.C. § 2. Jurisdiction is proper under 28 U.S.C. § 1332.

### A. Compelling Arbitration

"The first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). There is no genuine dispute that the claims raised in the malpractice case and the dispute concerning the outstanding fees must be submitted to arbitration if the arbitration clause is valid. I conclude that those disputes are within the scope of the arbitration clause.

However, Grider argues that the arbitration clause should not be enforced because: (1) the entire fee agreements, including the arbitration provisions, are void because he was fraudulently induced to enter into them; (2) MCB breached its fiduciary duty to Grider; (3) the arbitration provisions violate Oklahoma Rule of Professional Conduct 1.8; (4) the arbitration provisions are voided by Article 23, Section 8 of the Oklahoma Constitution; (5) issue preclusion applies based on the denial of a motion to dismiss in the pending Oklahoma malpractice case; and (6) the relief requested is barred by the doctrine of unclean hands. These arguments all lack merit.

Grider's contention that the entire fee agreements are void must be decided by the arbitrator. Except where the parties intend otherwise, issues relating to the making or enforcement of a contract containing an arbitration clause are to be decided by the arbitrator and not by a federal court. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–06, 87 S.Ct. 1801, 1805–07, 18 L.Ed.2d 1270 (1967); *see Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 538 (10th Cir.1987). Because "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), I conclude that the arbitration clause encompasses the dispute concerning the overall validity of the fee agreements. Accordingly, that dispute should be referred to the arbitrator. However, unlike Grider's arguments directed at the fee agreements generally, I can decide the validity of the arbitration clause itself. *Prima Paint*, 388 U.S. at 402–06, 87 S.Ct. at 1805–07.

■ Grider contends that he was fraudulently induced to arbitrate. I disagree. MCB never misled Grider as to the effect of the arbitration clause. Moreover, Grider read the fee agreements, noticed and understood the arbitration clause, and had the opportunity to discuss the clause with his Oklahoma counsel.

■ Grider argues that when he signed the fee agreement he had a fiduciary relationship with MCB and that because the arbitration clause favors MCB it should be voided as a breach of the fiduciary duty. I reject this argument because I conclude that there was no fiduciary relationship between the parties until Grider signed the fee agreement on February 10, 1986. Grider did not meet his burden of proving that an attorney-client relationship was formed before then. Because there was no fiduciary relationship between the parties when Grider entered into the fee agreement, there was no breach of fiduciary duty concerning the arbitration clause.

I also conclude that the arbitration clause in the modified fee agreement should not be voided as a breach of MCB's fiduciary duty to Grider. When Grider signed the modified agreement there was undoubtedly an attorney-client relationship between the parties. However, the modified fee agreement did not improve MCB's position concerning the parties' duty to arbitrate. That duty was fixed by the February 10 agreement and was unchanged by the March 4 letter.

■ Grider next contends that the arbitration clause is void because it violates Oklahoma Rule of Professional Conduct 1.8. That rule reads "[a] lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for the lawyer's personal malpractice." The arbitration provisions here do not prospectively limit lawyer liability to the client. Rather, they merely shift determination of the malpractice claim to a different forum. Moreover, *Monahan v. Paine Webber Group, Inc.,* 724 F.Supp. 224, 227 (S.D.N.Y.1989), held that a New York ethical rule, analogous to Oklahoma Rule of Professional Conduct 1.8, did not forbid the enforcement of an agreement to arbitrate. I conclude that Oklahoma Rule of Professional Conduct 1.8 does not void the parties agreement to arbitrate.

■ I also conclude that the arbitration clause, which waives Grider's state constitutional right to a jury trial, is not voided by Article 23, Section 8 of the Oklahoma Constitution. This section states that "[a]ny provision of a contract, express or implied, made by any person, by which any of the benefits of this constitution is sought to be waived, shall be null and void."

"The validity and interpretation of arbitration clauses affecting interstate commerce are governed by federal law." *Hart v. Orion Ins. Co.,* 453 F.2d 1358, 1361 (10th Cir.1971); *see Moses H. Cone,* 460 U.S. at 24–25 & n. 32, 103 S.Ct. at 941–42 & n. 32. The federal law applicable comprises generally accepted principles of contract law. *Neal v. Hardee's Food Sys., Inc.,* 918 F.2d 34, 37 n. 5 (5th Cir.1990); *Genesco Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 845 (2d Cir.1987). I may look to state law to shape these principles. *Neal,* 918 F.2d at 37–38 n. 5; *Flink v. Carlson,* 856 F.2d 44, 46 n. 2 (8th Cir.1988).

Because the fee agreements in this case evidence a transaction involving interstate commerce, federal law governs the validity of the agreement to arbitrate. Oklahoma state law is relevant only to the extent that I look to it to shape *general* contract law principles. Article 23, Section 8 of the Oklahoma Constitution does not reflect general contract law principles and is inconsistent with the federal policy in favor of arbitration. Consequently, I decline to adopt it as the federal substantive law applicable to this case. *Cf. Southland Corp. v. Keating,* 465 U.S. 1, 10–16, 104 S.Ct. 852, 858–61, 79 L.Ed.2d 1 (1984).

Grider next contends that the petition to compel arbitration is barred by issue preclusion. Petitioners filed a motion to dismiss or enforce arbitration in the Oklahoma malpractice action. The trial court denied the motion in January, 1991. Petitioners appealed this order to the Okla-

homa Supreme Court, but voluntarily dismissed the appeal. Grider now claims that the district court's denial of the motion to dismiss should be afforded preclusive effect. I disagree.

The full faith and credit statute, 28 U.S.C. § 1738, requires that I give state judicial proceedings the same preclusive effect as would the courts of the forum state. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985); *Carter v. City of Emporia*, 815 F.2d 617, 619 (10th Cir.1987). I thus look to Oklahoma law to determine what, if any, preclusive effect to give to the Oklahoma state court's January, 1991 order. *See Carter*, 815 F.2d at 619.

Under Oklahoma law, preclusive effect is given to a prior state court decision only where there was a final decision on the merits. *Panama Processes, S.A. v. Cities Service Co.*, 796 P.2d 276, 283 (Okla. 1990). Prejudgment orders are not given preclusive effect. *Id.* Denial of the motion to dismiss was a prejudgment order, not a final decision on the merits, and will not be given preclusive effect. Petitioners' appeal of the denial does not alter this conclusion because the appeal was voluntarily dismissed and the Oklahoma Supreme Court did not reach the merits of the arbitration issue. There being no final decision on the merits, the denial of the motion to dismiss will not be given preclusive effect.

Finally, Grider argues that the relief requested is barred by the doctrine of unclean hands. The claim of unclean hands apparently stems from the petitioners relitigating an issue allegedly decided in the Oklahoma malpractice case and the Tenth Circuit's affirmance of the dismissal of the RICO suit. Petitioners' conduct, if inappropriate at all, is not sufficiently egregious to warrant application of the unclean hands doctrine.

Accordingly, I find and conclude that the parties entered into a valid agreement to arbitrate the disputes in question and, thus, the petition to compel arbitration should be granted.

### B. Staying The Malpractice Case

Section 3 of the FAA allows a court to stay its own proceedings pending arbitration. Here, petitioners seek to stay proceedings in another court. Accordingly, section 3 of the FAA is not applicable.

However, a stay may be available under the Anti–Injunction Act. 28 U.S.C. § 2283. Under section 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." As discussed above, I will order the parties to submit their claims and disputes to arbitration. Any further proceedings in state court on the arbitrable claims and disputes would be inconsistent with that order. Consequently, a stay of the malpractice case is justified "to protect or effectuate" my order compelling arbitration. *H & M Charters, Inc. v. Reed*, 757 F.Supp. 859, 863 (S.D. Ohio 1991); *Pervel Indus., Inc. v. TM Wallcovering, Inc.*, 675 F.Supp. 867, 870 (S.D.N.Y.1987), *aff'd*, 871 F.2d 7 (2d Cir.1989); *Hunt v. Mobil Oil Corp.*, 557 F.Supp. 368, 372 & n. 13 (S.D.N.Y.), *aff'd without opinion*, 742 F.2d 1438 (2d Cir. 1983); *Necchi Sewing Machine Sales Corp. v. Carl*, 260 F.Supp. 665, 669 (S.D.N.Y.1966). Thus, I conclude that a stay of the malpractice case is appropriate.

Accordingly it is ORDERED that:

(1) petitioners' claim concerning allegedly outstanding legal fees owed by Grider shall be submitted to arbitration as provided by the fee agreements;

(2) Grider's claims against petitioners currently pending in Case No. CJ–90–2723 in the District Court of Oklahoma County, Oklahoma shall be submitted to arbitration as provided by the fee agreements;

(3) Case No. CJ–90–2723 in the District Court of Oklahoma County, Oklahoma is STAYED as to all claims asserted by Grider against petitioners until arbitration has been completed;

(4) Grider's motion to dismiss is DE-NIED; and

(5) final judgment shall enter with petitioners awarded costs.