Opinion issued October 1, 2009















 
 





In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-04-01029-CV




BOB CHAMBERS, et al., Appellants




V.

JOHN O’QUINN, JOHN M. O’QUINN, P.C., and JOHN M. O’QUINN
D/B/A O’QUINN & LAMINACK, Appellees




On Appeal from the 61st District Court 
Harris County, Texas
Trial Court Cause No. 1999-58265 




OPINION ON REMAND FROM THE TEXAS SUPREME COURT

          This suit was brought by former clients, Bob Chambers and 182 others
(“appellants”), against John O’Quinn, John M. O’Quinn, P.C., and John M. O’Quinn
D/B/A O’Quinn & Laminack (“appellees”), for legal malpractice. Appellants appeal
from the trial court’s orders dismissing their suit for want of prosecution and
overruling their motion for reinstatement and new trial. In two points of error,
appellants argue that the trial court erred in: (1) compelling arbitration under the
terms of a compulsory arbitration clause in the attorney-client contract executed
between themselves and appellees, and (2) dismissing the case for want of
prosecution. We affirm.
Background
          On November 23, 1999, appellants sued appellees for legal malpractice in
connection with appellants’ representation and settlement of their toxic tort claims. 
Appellees responded with a motion to compel arbitration under the terms of a
compulsory arbitration clause contained in a contingency fee agreement executed
between the parties. On April 14, 2000, the trial court granted appellees’ motion to
compel arbitration.
          On December 20, 2001, appellants petitioned for writ of mandamus in this
Court, complaining of the order compelling arbitration. We issued an opinion on
January 7, 2002, denying appellants’ petition for writ of mandamus because it was
unverified. See In re Chambers, No. 01-01-01216-CV, 2002 WL 24567 (Tex.
App.—Houston [1st Dist.] Jan. 7, 2002, orig. proceeding) (not designated for
publication). On January 10, 2002, appellants filed a petition for writ of mandamus
in the Fourteenth Court of Appeals, asking that court to order the trial court to
withdraw its order compelling arbitration.


 The Fourteenth Court of Appeals issued
an opinion on February 7, 2002, denying appellants’ petition for writ of mandamus. 
On March 18, 2002, appellants filed another petition for writ of mandamus in the
Texas Supreme Court, which was also denied.



          On January 15, 2004, the trial court signed an order decreeing that “unless a
final arbitration hearing on [appellants’] claims has commenced before the American
Arbitration Association on or before July 9, 2004, [appellants’] claims shall be
DISMISSED FOR WANT OF PROSECUTION.” On July 21, 2004, the trial court
signed an order dismissing appellants’ suit for want of prosecution because no final
arbitration hearing had commenced by July 9, 2004. On August 5, 2004, appellants
filed a motion for reinstatement or new trial. After a hearing on August 20, 2004, the
trial court denied appellants’ motion for reinstatement or new trial. On September 22,
2004, appellants appealed.
          While the appeal was pending, the parties proceeded to arbitration, with the
arbitrator ultimately ruling in the appellees’ favor. Appellees filed a motion for
summary judgment in those proceedings. The arbitrator granted appellees’ summary-judgment motion and entered an award that appellants take nothing on their claims. 
Appellants filed a new lawsuit to vacate the arbitration award.


 The same trial court
that had dismissed appellants’ suit for want of prosecution, the 61st District Court,
held a hearing on appellants’ application for vacatur. The trial court signed a final
judgment on June 10, 2005, denying appellants’ request to vacate the arbitration
award and confirming the arbitration award. Appellants filed another appeal among
the same parties in this Court from the trial court’s June 10 final judgment.



          This Court issued two separate memorandum opinions (1) affirming the
judgment of the trial court confirming the arbitration award, Chambers, 2006 Tex.
App. LEXIS 9006, at *19, 2006 WL 2974318, at *6, and (2) dismissing the appeal
of the order compelling arbitration on jurisdictional grounds, 2006 WL 2853893, at
*2 (not designated for publication). 
          In dismissing the appellants’ first appeal, we concluded that mandamus was the
proper remedy to review the trial court’s order compelling arbitration. 2006 WL
2853893, at *2. We concluded further that because appellants had already sought and
been refused mandamus relief by this Court and the Fourteenth Court of Appeals, we
lacked appellate jurisdiction and were bound by these previous rulings denying
mandamus. Id. at *2. The Texas Supreme Court granted appellants’ petition for
review and reversed, remanding the case for us to conduct a “review on the merits.” 
 Chambers v. O’Quinn, 242 S.W.3d 30, 32 (Tex. 2007). The mandate instructed that
the case was being remanded “for further proceedings consistent with [the supreme
court’s] opinion.” Id.
          We based our disposition on three holdings. See 2006 WL 2853893, at *2, 4. 
While not expressly addressing the last of our three holdings, the supreme court held
that we had erred in concluding that we “lacked appellate jurisdiction,” and it
reversed our judgment and remanded the case for us to review the appeal “on the
merits.” Chambers, 242 S.W.3d 30 at 32. We thus construe the supreme court’s
mandate as requiring this Court to consider, on remand, all of appellants’ challenges
under their issues presented one and two.
Standard of Review
          In determining whether to compel arbitration, the trial court must decide the
following: (1) whether a valid, enforceable arbitration agreement exists, and (2) if so,
whether the claims asserted fall within the scope of that agreement. Dallas
Cardiology Assoc., P.A. v. Mallick, 978 S.W.2d 209, 212 (Tex. App.—Texarkana
1998, pet. denied). If the answers to both prongs are affirmative, the trial court has
no discretion but to compel arbitration and stay its proceedings pending arbitration. 
Id. The party seeking arbitration has the initial burden to establish his right to the
remedy under the first prong; that is, to establish that a valid arbitration agreement
exists. Id. Once the existence of an arbitration agreement has been established, a
presumption attaches favoring arbitration. Id. At this point, the burden shifts to the
opposing party to establish some ground for the revocation of the arbitration
agreement. Such grounds include fraud, waiver, unconscionability, or that the dispute
falls outside the scope of the agreement. Id. The trial court must resolve any doubt
about these issues in favor of arbitration. Id.
          Appellate courts use a “no evidence” standard for review of the trial court’s
factual determinations. See Pony Express Courier Corp. v. Morris, 921 S.W.2d 817,
820 (Tex. App.—San Antonio 1996, no writ). Under that standard, we consider only
the evidence that supports the fact finding, while disregarding the evidence to the
contrary. Hearthshire Braeswood Plaza Ltd. P’ship v. Bill Kelly Co., 849 S.W.2d
380, 384 (Tex. App.—Houston [14th Dist.] 1993, writ denied). If there is any
evidence of probative force to support the finding, the trial court’s finding must be
upheld. See id. However, when the trial court decides a matter involving both factual
determinations and legal conclusions, we employ the abuse of discretion standard to
review. See Pony Express Courier Corp., 921 S.W.2d at 820. Under the abuse of
discretion standard, we defer to the trial court’s factual determinations while
reviewing legal conclusions de novo. Id. Pure legal conclusions or matters not
involving extrinsic evidence, are subject to de novo review under the abuse of
discretion standard. See id. at 820 n. 2; see also Fridl v. Cook, 908 S.W.2d 507, 511
(Tex. App.—El Paso 1995, writ dism’d w.o.j.). Order Compelling Arbitration
          Appellants argue in their first point of error that the trial court erred by granting
appellees’ motion to compel arbitration because the compulsory arbitration clause in
each agreement was void. Each contract, executed between O’Quinn and each
individual appellant, contained the following language:
X. ARBITRATION
10. Any and all disputes, controversies, claims or demands arising out
of or relating to this Agreement or any provision hereof, the providing
of services by Attorneys to Client, or in any way relating to the
relationship between Attorneys and Client, whether in contract, tort or
otherwise, at law or in equity, for damages or any other relief, shall be
resolved by binding arbitration pursuant to the Federal Arbitration Act
in accordance with the Commercial Arbitration Rules then in effect with
the American Arbitration Association. Any such arbitration proceeding
shall be conducted in Harris County, Texas. This arbitration provision
shall be enforceable in either federal or state court in Harris County,
Texas pursuant to the substantive federal laws established by the Federal
Arbitration Act. Any party to any award rendered in such arbitration
proceeding may seek a judgment upon the award and that judgment may
be entered by any federal or state court in Harris County, Texas having
jurisdiction.
 
          The contracts also contained the following heading in capital letters at the top
of the first page, “This contract is subject to arbitration under the Texas general
arbitration statute.” 
 
A.      “Personal Injury”
          A written agreement to arbitrate is valid and enforceable if an arbitration
agreement exists and the claim asserted is within the scope of the agreement. Tex.
Civ. Prac. & Rem. Code § 171.001 (Vernon 2005). However, an exception exists
for personal injury claims which requires that each party to a claim, on the advice of
counsel, agree to arbitration in writing. Tex. Civ. Prac. & Rem. Code Ann. §
170.002(a)(3),(c)(1) (Vernon 2005). The agreement must be signed by each party and
each party’s attorney. Id. § 170.002(c)(2). Appellants urge that the instant suit is
akin to a personal injury claim and that the execution of a written agreement to
arbitrate should have been subject to the safeguards in section 170.002(a)(3). 
          Appellants assert that, unlike ordinary commercial contractual relationships,
the fiduciary nature of the attorney-client relationship dictates against an attorney’s
ability to impose an arbitration condition on a client. In the instant case, appellants
sued O’Quinn for breach of fiduciary duties and legal malpractice. Our sister courts
are split on the issue of whether a legal malpractice suit is a claim for personal injury. 
See Taylor v. Wilson, 180 S.W.3d 627, 630 (Tex. App.—Houston [14th Dist.] 2005,
pet. denied). The majority of courts have held that legal malpractice claims are not
claims for personal injury. Id. (holding legal malpractice claim is not claim for
personal injury); Miller v. Brewer, 118 S.W.3d 896, 899 (Tex. App.—Amarillo 2003,
no pet.) (same); In re Hartigan, 107 S.W.3d 684, 690 (Tex. App.—San Antonio 2003,
pet. denied) (same). But see In re Godt, 28 S.W.3d 732, 739 (Tex. App.—Corpus
Christi 2000, no pet.) (holding legal malpractice claim falls within personal injury
exception and is included within scope of Texas Arbitration Act). 
          Appellants request that we hold that in a legal malpractice case the test for
deciding whether section 171.002 applies is whether the underlying case involves
personal injury. We decline to do so. Instead, we adopt the reasoning of Fourteenth
Court of Appeals in Taylor, upholding the majority view that legal malpractice claims
are not claims for personal injury, and, therefore, arbitration agreements are
enforceable in the context of a legal malpractice suit. See Taylor, 180 S.W.3d at 630
(holding legal malpractice claim is not claim for personal injury).
          The Taylor court examined the legislative history of the personal injury
provision in the Texas Arbitration Act and found “no room for doubt in the
legislature’s intent to restrict the meaning of the personal injury exception of the
Texas Arbitration Act to physical personal injury.” Id. at 631. The court also noted
that the plaintiff’s underlying claim was for economic losses rather than personal
injury. Id. at 630. In the instant case, although appellants’ underlying claim was for
personal injury, appellants’ malpractice claim is not, by virtue of this fact,
transformed into a claim for personal injury. Rather, appellants’ legal malpractice
claim remains a claim of economic injury. Thus, appellants’ malpractice claim is not
excluded from arbitration.
B. Failure to disclose material facts, seek advice of counsel
          Appellants also assert that the arbitration provisions are unenforceable because
the O’Quinn firm failed to disclose the arbitration agreement and failed to adequately
explain material facts and issues relating to arbitration. Additionally, appellants
claim that none of them were advised to seek, or did seek, independent counsel with
respect to arbitration and that public policy dictates that such safeguards be
implemented with respect to compulsory arbitration agreements executed within an
attorney-client relationship. Id. 
          In support of their argument, appellants rely on the dissenting opinion of Chief
Justice Phil Hardberger in Henry v. Gonzalez, 18 S.W.3d 684 (Tex.—San Antonio
2000, pet. dism’d). In Henry, former clients brought suit against their former
attorneys alleging legal malpractice and breach of fiduciary duty, amongst other
claims. Henry, 18 S.W.3d at 687. The clients also sought a declaratory judgment that
an arbitration clause in the contract they executed with their former attorney was
unenforceable and void. Id. The court determined that a valid arbitration agreement
existed, and rejected the clients’ arguments that they were fraudulently induced to
sign the contract. Id. at 692. In his dissent, Hardberger reasoned that the
“fundamental fiduciary nature of the attorney-client relationship dictates against an
attorney’s ability to impose an arbitration condition on a client.” Id. at 693. 
Hardberger opined, “Clients are often in vulnerable positions, requiring them to
bestow a large amount of trust in their attorneys . . . Applying general contractual
principles to an arbitration provision in the attorney-client context ignores the
practical reality that in most instances the attorney and his or her client are not
engaged in an arm’s length transaction during their initial negotiations.” Id. 
Hardberger concluded that attorneys generally have a greater advantage over their
clients in an arbitration setting. Id. Appellants argue, as did Hardberger, that
emerging national trends require attorneys to observe and satisfy safeguard
requirements in order to enforce an arbitration agreement inserted into an attorney-client contingent fee contract. Id. 
          We decline to extend Justice Hardberger’s reasoning to this case. Whether to
impose conditions upon the enforceability of arbitration provisions between attorney
and client is a matter for the legislature, not the courts. As previously noted, the
legislature has imposed certain conditions with respect to personal injury claims,
requiring that agreements to arbitrate such claims be in writing and entered into on
the advice of counsel. Tex. Civ. Prac. & Rem. Code Ann. § 171.002(c) (Vernon
2005). The legislature’s failure to impose such conditions on attorney-client
contracts, while expressly recognizing them in other contexts, indicates that the
legislature did not intend to impose such conditions. See Fireman’s Fund County
Mut. Ins. Co. v. Hidi, 13 S.W.3d 767, 769 (Tex. 2000) (holding “[w]hen the
Legislature has employed a term in one section of a statute and excluded it in another,
we presume that the Legislature had a reason for excluding it.”)
C. Waiver of Right to Jury Trial
          Appellants also argue that the agreement impermissibly waives their right to
a jury trial. 
          The San Antonio Court of Appeals previously rejected this argument in
Gonzalez. There, the court stated that “well established caselaw favors mandatory
arbitration and holds that arbitration does not deny parties their right to a jury trial,
as a matter of law.” Gonzalez, 18 S.W.3d 684, 691 (citing Jack B. Anglin Co., Inc.
v. Tipps, 842 S.W.2d 266, 268 (Tex. 1992)). Moreover, a difference exists between
a jury trial waiver and an agreement to arbitrate disputes. Arbitration is an agreement
to resolve disputes out of court in the first instance, not an agreement to waive a
particular constitutional right available within the judicial process. D. Wilson Const.
Co., Inc. v. McAllen Indep. Sch. Dist., 848 S.W.2d 226, 231 (Tex. App.—Corpus
Christi 1992, writ dism’d w.o.j.). When a party contractually agrees to arbitrate a
dispute, it waives its rights to recourse in the courts. Id.
          Because arbitration does not deny parties their right to a jury trial as a matter
of law, we reject appellants’ argument.
D.      The Federal Arbitration Act
          Appellants next assert that appellees are not entitled to arbitration because
federal, rather than Texas law, controls under the terms of the contract.


 Specifically,
appellants state that the agreement “does not contain any language providing that
Texas law may govern the arbitration agreement or that arbitration shall be
enforceable under the Texas Arbitration Act.” 
          Provision 10 of the contract states that “any and all disputes . . . arising out of
or relating to this Agreement . . . shall be resolved by binding arbitration pursuant to
the Federal Arbitration Act[.]” The contract also provides, “This arbitration provision
shall be enforceable in either federal or state court in Harris County, Texas pursuant
to the substantive federal laws established by the Federal Arbitration Act.” Appellees
acknowledge that the contract references the Federal Arbitration Act, but they suggest
that these references to federal law must be harmonized with the notice at the top of
the first page of the contract, which states in capital letters, “This contract is subject
to arbitration under the Texas general arbitration statute.” 
          The San Antonio Court of Appeals was confronted with a similar set of facts
in Henry. Henry, 18 S.W.3d at 688. There, provision 10 of the attorney-client
contract stated that the “Agreement shall be construed under and in accordance with
the laws of the State of Texas . . . .” Id. However, provision 11 provided that all
disputes “shall be resolved by binding arbitration pursuant to the Federal Arbitration
Act . . . .” Id. The contract also contained a clause that appeared in all capital letters
above the signature lines stating, “This contract is subject to arbitration under the
Texas General Arbitration Statute.” Id. Thus, the contract in Henry was internally
inconsistent as to whether the FAA or the TAA governed. Id.
          In concluding the dispute was governed by the TAA, the court referred to basic
principles of contract interpretation. Id. In interpreting a contract, courts examine
the entire agreement in an effort to harmonize and give effect to all provisions of the
contract so that none will be meaningless. Id. (citing Bush v. Brunswick Corp., 783
S.W.2d 724, 728 (Tex. App.—Fort Worth 1989, writ denied)). If the provisions of
the contract appear to conflict, they should be harmonized, if possible, to reflect the
intentions of the parties. Id. (citing Ogden v. Dickinson State Bank, 662 S.W.2d 330,
332 (Tex. 1983); Bush, 783 S.W.2d at 728). Courts cannot strike down any portion
of a contract unless there is an irreconcilable conflict. Id. (citing Ogden, 662 S.W.2d
at 332). 
          After applying the above-referenced principles and determining that the two
provisions in the contract were in irreconcilable conflict, the Henry court held that the
TAA controlled the dispute. Id. The court noted that, although the contract stated
that the FAA controlled, performance of the contract did not relate to interstate
commerce and that the FAA is implicated in transactions relating to interstate
commerce. Id. (citing Cantella & Co., Inc. v. Goodwin, 924 S.W.2d 943, 944 (Tex.
1996)). Therefore, the court struck down the provision relating to the FAA and
concluded that the dispute was governed by the TAA. Id. The court reached its
conclusion, in part, because the contract’s prominent bold type stated that any
arbitration would be governed by the TAA, all parties involved in the suit were Texas
residents, the contract was signed in Texas, the contract was to be performed in Texas
only, and the dispute did not relate in any way to interstate commerce. Id.
          Similarly, the contract in the instant case (1) does not relate to interstate
commerce, and (2) was executed between Texas residents in Texas, to be performed
in Texas. Therefore, we hold that the TAA controls this dispute. See also In re
Godt, 28 S.W.3d at 737 (holding that, where there existed a similar conflict, the TAA
controlled where there was no evidence demonstrating that attorney-client agreement
related to interstate commerce.)
E.      Texas Disciplinary Rule of Conduct 1.08(g)
          Appellants next argue that O’Quinn attempted to limit his liability in violation
of Rule 1.08(g) of the Texas Disciplinary Rules of Professional Conduct. See Tex.
R. Disciplinary P. 1.08(g), reprinted in Tex. Gov’t. Code Ann., tit. 2, subtit. G
(Vernon 2005). Rule 1.08(g) expressly forbids an attorney from entering into an
agreement with a client that prospectively limits the attorney’s liability to the client
unless (1) the agreement is permitted by law and (2) the client is independently
represented in making the agreement. Keck, Mahin & Cate v. Nat’l Union Fire Ins.
Co., 20 S.W.3d 692, 699 (Tex. 2000). 
          Appellants claim that O’Quinn has, through arbitration, sought to limit
appellee’s liability to appellants for the precise claims asserted in this litigation. 
Furthermore, by asking for separate arbitration in its motions, the O’Quinn Firm
clearly sought to burden, and did burden, appellants with “arbitration costs” that made
arbitration financially prohibitive. 
          Arbitration is a means of dispute resolution and does not constitute a limitation
on a party’s liability. See McGuire, Cornwell & Blakey v. Grider, 765 F.Supp. 1048,
1051 (D. Col. 1991) (holding that attorney arbitration clauses “do not prospectively
limit lawyer liability to the client. Rather, they merely shift determination of the
malpractice claim to a different forum.”) As appellees correctly note, appellants
asserted in arbitration the identical causes of action they assert in the instant litigation
and sought the same categories and amounts of damages. Thus, appellee’s liability
is not limited as a practical matter. Moreover, the San Antonio Court of Appeals has
held that a similar arbitration clause did not violate Disciplinary Rule 1.08(g), noting
“the arbitration clause merely prescribes the procedure for resolving any disputes
between attorney and client.” In re Hartigan, 107 S.W.3d 684, 689 (Tex. App.—San
Antonio 2003, no pet.). The same description aptly applies, and thus the same result
obtains here.
          Consequently, we hold that the arbitration clause in the instant case does not
limit the liability to which appellees would otherwise be exposed, and therefore it
does not violate Disciplinary Rule 1.08(g).
F.      Waiver
          Appellants claim that appellees waived their right to arbitrate. In support of
their argument, appellants cite Sedillo v. Campbell, 5 S.W.3d 824, 826 (Tex.
App.—Houston [14th Dist.] 1999, no pet.), for the principle that a party may
impliedly waive arbitration by “engaging in some combination of filing an answer,
setting up a counterclaim, pursuing extensive discovery, moving for a continuance
and failing to timely request arbitration.” Sedillo, 5 S.W.3d at 827. Stated
differently, a court may find that a party has waived its right to arbitration if such
party substantially invokes the judicial process to the opposing party’s detriment. Id. 
          Appellants suggest that this case compares favorably with the defendant’s
actions constituting waiver in Sedillo. Id. There, the defendant:
          (1) answered the subject lawsuit and immediately filed a bankruptcy petition
that was dismissed “based on bad faith”;
          (2) “filed numerous pleadings and motions in the court below without first
seeking arbitration”;
          (3) filed a Response to Motion for Summary Judgment;
          (4) filed a jury demand and paid the jury fee; and
          (5) did not file its motion to stay proceedings in favor of arbitration until eleven
months after plaintiff filed suit.
Id. at 826–27. 
          In comparing O’Quinn’s actions with Sedillo’s, appellant notes that O’Quinn
filed an answer in the trial court and sought, before attempting to invoke arbitration,
both a Rule 11 Agreement extending the time for answering and a sixty-day
abatement of appellant’s suit under the Deceptive Trade Practices Act. Moreover,
O’Quinn did not file a motion to stay proceedings in favor of arbitration until six
months after suit had been filed. Appellant notes further that O’Quinn filed a
companion suit against appellants’ attorneys, took depositions, and sought abatement
in the companion case. 
          Because public policy favors arbitration, there is a strong presumption against
waiver, and any doubt about whether a party waived contractual arbitration rights
must be resolved in favor of arbitration. Id. at 826– 27; In re Oakwood Mobile
Homes, 987 S.W.2d 571, 573–74 (Tex. 1999); Valero Energy Corp. v. Teco Pipeline
Co., 2 S.W.3d 576, 590 (Tex. App.—Houston [14th Dist.] 1999, no pet.). After
comparing Sedillo to O’Quinn’s actions in the instant case, we determine that no
waiver occurred. A party invokes the judicial process only to the extent that it
“litigates a specific claim it subsequently seeks to arbitrate.” Sedillo, 5 S.W.3d at 827
(quoting Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 328 (5th Cir. 1999)). 
O’Quinn filed for arbitration within a reasonable time of answering appellants’ case
and the fact that O’Quinn filed suit against appellants’ attorneys does not amount to
litigation of this specific claim. Therefore, O’Quinn did not “substantially invoke”
the judicial process, and the trial court did not abuse its discretion in holding that no
waiver occurred. See In re Bruce Terminex Co., 988 S.W.2d 702, 705–06 (Tex.
1998) (holding no waiver even though party (1) did not file an application for
arbitration within two years of suit being filed; (2) did not act to institute arbitration
for more than 17 months after the trial court compelled arbitration; and (3) served
discovery in the lawsuit that would not have been allowed in arbitration); see also
Pennzoil Oil Co. v. Arnold Oil Co., 30 S.W.3d 494 (Tex. App.—San Antonio 2000,
no pet.) (holding no waiver even though party, before requesting arbitration: (1)
moved for change in venue; (2) served interrogatories and two sets of document
requests; (3) participated in six depositions; (4) participated in docket control
conference; (5) requested a jury; (6) requested an extension of trial date; (7) proposed
protective order regarding discovery; (8) moved to compel discovery; and (9) moved
for summary judgment).
G.      Texas Government Code section 82.065(a)
          Finally, appellants assert that the agreement, along with the arbitration clause,
is void because it was not executed in conformance with section 82.065 of the Texas
Government Code, which provides, “[a] contingent fee contract for legal services
must be in writing and signed by the attorney and client.” Tex. Gov’t Code Ann.
§ 82.065(a) (Vernon 2005). Appellants note that O’Quinn did not sign the
agreements, although the clients did.
          Appellant’s argument that the contract is void due to the absence of O’Quinn’s
signature is unavailing. In Enochs v. Brown, 872 S.W.2d 312, 318 (Tex.
App.—Austin 1994, no writ), the Austin Court of Appeals examined the legal effect
of a contingent fee agreement fully performed but not signed by the attorney. The
court looked to the legislative purpose behind section 82.065 and determined that the
statute was designed to prevent fraud. Id. The court determined that the statute
accomplishes its purpose of guarding against fraud in contingent fee contracts and
complies with the statute of frauds by requiring the party enforcing the contract to
produce a written contract signed by the party to be charged. Id.
          We agree with the reasoning in Enochs. Consequently, because O’Quinn was
the party enforcing the contingent fee agreement against appellants and because
appellants, the clients, signed the agreements in the instant case, we hold that section
82.065(a)’s purpose has been fulfilled, and that the contract is not void. 
          For all the aforementioned reasons, we hold that the trial court did not abuse
its discretion in determining that a valid, enforceable arbitration agreement existed
and that the claims asserted fell within the scope of that agreement. Mallick, 978
S.W.2d at 212. Thus, the trial court had no discretion but to compel arbitration. We
overrule appellants’ first point of error.
Dismissal for Want of Prosecution
             Appellants argue in their second point of error that the trial court erred in
dismissing their suit for want of prosecution and request that the trial court’s
dismissal be reversed. 
          The trial court signed an order on July 21, 2004, dismissing appellants’ suit for
want of prosecution because no final arbitration hearing had commenced by July 9,
2004, as ordered.   As an initial matter, appellants claim that the trial court’s order
threatening dismissal unless arbitration was commenced by July 9, 2004 was not a
notice of trial or “dispositive” setting and that the court could not dismiss until giving
additional notice of potential dismissal with a hearing on a date certain. Appellants
further claim that they were confused as to precisely what actions had to be taken to
avoid dismissal. Finally, appellants claim that they received no notice of the trial
court’s order informing them that “unless a final hearing on Plaintiff’s claims has
commenced before the American Arbitration Association on or before July 9, 2004,
Plaintiff’s claims shall be DISMISSED FOR WANT OF PROSECUTION.” 
          Even assuming that appellants received no notice of the trial court’s intention
to dismiss their suit for want of prosecution, we hold that any such error was harmless
because appellants were given an opportunity to be heard on their motion to reinstate,
filed after the dismissal for want of prosecution. See Franklin v. Sherman Indep. Sch.
Dist., 53 S.W.3d 398, 403 (Tex. App.—Dallas 2001, pet. denied).
          Appellants filed a “Motion for Reinstatement and/or New Trial,” which
contained arguments identical to those presented on appeal. After a full hearing on
August 20, 2004, the trial court denied appellants’ motion. If a party receives the
same hearing before the trial court that it would have had before the dismissal was
signed, no harmful error is committed. Id. at 403. Jimenez v. Transwestern Property
Company, 999 S.W.2d 125, 129 (Tex. App.—Houston [14th Dist.] 1999, no pet.),
also shows that any error did not harm the appellants. In that case, the appellant was
not given notice of the trial court’s intent to dismiss for want of prosecution but was
given a hearing on the motion to reinstate. Id. at 129. The court held that the hearing
on appellant’s motion to reinstate “satisfied the due process rights applicable to the
dismissal of his case.” Id. Therefore, assuming without deciding that the trial court
erred in dismissing appellants’ case, we hold that such error was harmless. Id.
          We overrule appellants’ second point of error.
Conclusion
          We affirm the judgment of the trial court.      
 

 








                                                                                  Tim Taft



                                                                                  Justice 
 
Panel consists of Justices Keyes, Hanks, and Taft.  

Appendix A

1.       ALLEN, ANGELESTINE
2.       ALLEN, ALTON
3.       ALLEN, BERTRAND
4.       ANDERSON, DONALD
5.       ARCLESSE, ANDRE
6.       ARCLESSE, FRANKIE
7.       ARCLESSE, CLARENCE
8.       ARCLESSE, CLARENCE (JR.)
9.       AUGUST, ANTHONY
10.     BABERS, HENRY
11.     BABERS, ABDULAH
12.     BABERS, RODERICK
13.     BABERS, MARIE
14.     BANKS, PARIS
15.     BELL, DOROTHY
16.     BELL, ALECIA
17.     BLACKSHEAR, JERRY
18.     BLACKSHEAR, OLEVIA
19.     BLACKSHEAR, THELMA
20.     BOLDEN, SHERRY
21.     BOUGERE, CECILIA
22.     BOUGERE, ROME
23.     BOUGERE, ROME (JR.)
24.     BOYD, BIRDIE
25.     BOYD, WILLIAM (JR.)
26.     BOYD, ANGELA
27.     BOYD, RODERICK
28.     BOYD, RYAN
29.     BROADNAX, EZELL
30.     BROADNAX, IRENE
31.     BROADNAX, SHARON
32.     BROWN, CEDRIC
33.     BROWN, LATREYA
34.     BROWN, LATANYA
35.     BRYANT, EARNESTINE
36.     BUCKNER, ARTHUR (II)
37.     BUCKNER, SANCHA
38.     BUCKNER, ARTHUR (III)
39.     BUCKNER, MARTHA
40.     CAMPBELL, JOHN
41.     CARMEN, LEVON
42.     CARMEN, MARVI
43.     CARMEN, LIONEL
44.     CHAMBERS, BOB
45.     CHAMBERS, DANIEL
46.     CHAMBERS, KEVIN D.
47.     CHAMBERS, KENNETH W. (SR.)
48.     CHAMBERS, KENNETH W. (JR.)
49.     CHAMBERS, BOBBY
50.     CHAMBERS, SANDRA
51.     CHAMBERS, CHRISTINA
52.     CHAMBERS, COURTNEY
53.     COMEAUX, ANN GELL
54.     COMEAUX, REV. LEARON
55.     COMEAUX, SANDRA
56.     COMEAUX, LEARON (JR.)
57.     COTTON, MARILYN
58.     DAVIS, JAMES
59.     DAVIS, JASON
60.     DAVIS, NIKIA
61.     DAVIS, LOIS
62.     DEMBY, HERBERT
63.     DEMBY, ROSA
64.     DIXON, LAWRENCE
65.     DUGAR, JOSEPH
66.     DUPLECHAIN, PATRICIA
67.     DUPLECHAIN, LAWRENCE
68.     ERZELL, KIRK
69.     ETIENNE, PEARLEY
70.     ETIENNE, D. DYRON
71.     ETIENNE, ADAM
72.     ETIENNE, DEANDRA
73.     FACTOR, JERRY
74.     FACTOR, JACQUELINE
75.     FIELDER, VIVIAN
76.     FIELDER, OTIS
77.     FOSTER, JANISHA
78.     FOSTER, RAIMON
79.     FOSTER, JANICE
80.     FREEMAN, BETTY
81.     GANTS, BARTHOLOMEW
82.     GARDNER, ANITA
83.     GARRETT, JAMES
84.     GEORGE, KENNETH
85.     GEORGE, ALICE
86.     GIPSON, LATRICE
87.     GIPSON, REGINALD
88.     GLOVER, PERRY
89.     GLOVER, ROSA
90.     GLOVER, TELISHA
91.     GLOVER, TRACY
92.     GRADY, WILLIAM
93.     GREEN, LUCY
94.     GREER, VERONICA
95.     GREER, LACHEA
96.     GUILLORY, FALONIA
97.     GUILLORY, JOHN
98.     GUY, JOHN
99.     GUY, BETTIE
100.   HAMILTON, HELEN
101.   HOLLEY, CATHRESHA
102.   JACKSON, OLETHA
103.   JOHNSON, DIMITRIA
104.   JOHNSON, MONTIQUE
105.   JOHNSON, RUFUS
106.   JOHNSON, FERDANA
107.   JOHNSON, DOROTHY
108.   JOHNSON, FREDDIE (JR.)
109.   JONES, DARRELL
110.   JORDAN, DARRELL
111.   JORDAN, VERNA
112.   JORDEN, BOBBY (JR.)
113.   JORDEN, EBONY
114.   JORDEN, ROSA
115.   JORDEN, ROSALYN
116.   JORDEN, BOBBY
117.   JORDEN, BOBBY (SR.)
118.   JOSEPH, LEROY
119.   KINNERSON, TERRENCE
120.   KINNEY, DAVIS
121.   LEE, LILLYANN
122.   LEWIS, RODNEY
123.   LEWIS, RUBY
124.   LEWIS, JOHN
125.   LINER, BETTY
126.   LINER, LEON
127.   LOTT, WILLIAM
128.   MAYS, CHERYL
129.   MAYS, TERRENCE
130.   MAYS, GREGORY
131.   MCGREW, HELEN
132.   MCGREW, JOHNNIE
133.   MILLS, MARION
134.   MILLS, ROBRIAN
135.   MINOR, GENTRY (SR.)
136.   MINOR, HORACE
137.   MINOR, HAZEL
138.   MINOR, TRENT
139.   MINOR, GENTRY (JR.)
140.   MINOR, MARTHA
141.   MINOR, SCHERAZADE
142.   PAGE, FRANK
143.   PICKENS, ALFRED
144.   PICKENS, ROSHALETTE
145.   PICKENS, CONSTANCE
146.   RANDLE, DANIEL
147.   RANDLE, KIMBERLY
148.   RANDLE, GWEN
149.   RANDLE, ANGELA
150.   REDMOND, LILLIE
151.   REDMOND, ALBERT
152.   RICHARDSON, CYNTHIA
153.   RICHARDSON, ROBERT
154.   ROBERTS, RODERIC
155.   ROBERTS, CREIGHTON
156.   ROBERTS, DELORES
157.   ROBERTS, CURTIS
158.   ROBINSON, JEROME
159.   ROGERS, XAVIER
160.   ROSETTE, BERNISE
161.   SHAW, DEBRA
162.   SMITH, NORLEAN
163.   STEWART, JOHN W.
164.   STEWART, NORMA
165.   STEWART, RODNEY
166.   TAYLOR, MARY
167.   THOMAS, ELLEN
168.   THOMAS, ERICKA
169.   THOMPSON, JERRY
170.   THOMPSON, MARY E.
171.   THOMPSON, ANITRIA
172.   THOMPSON, MARGIE
173.   WARD, CHRISTINA
174.   WARD, CLARENCE (III)
175.   WICKS, WANDA
176.   WILCOX, CHARLES
177.   WILCOX, CHARLES D.
178.   WILCOX, LATOYA
179.   WILCOX, JOAN
180.   WILLIAMS, LOLA ANN
181.   WILLIAMS, JAMES
182.   WILSON, THERIS
183.   WRIGHT, WILMA