ASSOCIATED EMPLOYERS LLOYDS V. JOE B. HOWARD

No. A-5828. Decided October 24, 1956.
Rehearing Overruled November 21, 1956.
(294 S.W. 2d Series 707)

*Cantey, Hanger, Johnson, Scarborough & Gooch, Howard Barker* and *Ed Reichelt,* all of Fort Worth, *Fred Minor,* of Denton, *Black & Stayton* and *John W. Stayton,* of Austin, for petitioner.

Since the record contains no evidence that respondent, Howard, signed the compromise settlement receipt or endorsed the check issued to him, because of a representation made to him by petitioner, Insurance Company, the recitation in such receipt that respondent accepted the check attached thereto in full settlement, accord and satisfaction of all claims for compensation by reason of his injuries relating thereto, precludes reopening the issue of compensation. Texas Emp. Ins. Ass'n. v. Kennedy, 135 Texas 486, 143 S.W. 2d 583; Traders & Gen. Ins. Co. v. Bailey, 127 Texas 322, 94 S.W. 2d 134; Indemnity Ins. Co. of N.A. v. Macatee, 129 Texas 166, 101 S.W. 2d 553.

*Boyd & Boyd,* and *W. C. Boyd, Jr.,* of Denton, and *W. C. Culp,* of Gainesville, for respondent.

Since plaintiff's suit in this instance was a suit to set aside a compromise settlement agreement because of fraud practiced on him in its procurement, and not a suit to reopen the issue of compensation the judgment of the Court of Civil Appeals was correct in holding that there was sufficient evidence for the

trial court to have found as it did. Brannon v. Pacific Emp. Ins. Co., 135 Texas 289, 224 S.W. 2d 466; Garsee v. Indemnity Ins. Co. of N.A., 47 S.W. 2d 654, no writ history; Williams v. Texas Emp. Ins. Co. 135 S.W. 2d 262, writ of error refused.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Respondent, Joe B. Howard, sued petitioner, Associated Employers Lloyds, to set aside a compromise settlement agreement and a release, executed by him, in order that he might seek recovery of additional benefits under the Workmen's Compensation Act. Trial was by the court without a jury and resulted in a judgment for respondent. The judgment was affirmed by the Court of Civil Appeals. 288 S.W. 2d 861.

A chronological history of events leading up to the suit will make the issues more understandable. The events related will be those shown by undisputed evidence and those assumed from viewing the evidence in its light most favorable to respondent.

On January 2, 1952, respondent, an employee of Kimbell-Diamond Milling Company, sustained an injury in the course of his employment. As a result of the injury respondent was forced to undergo an operation and was absent from his employment for approximately three and one-half months. During his absence from his employment petitioner, Kimbell-Diamond's insurance carrier, paid him weekly compensation benefits in the sum of $24.75.

On April 18, 1952, respondent returned to work. On April 22, 1952, an adjuster for petitioner, by representing that it was only a "release to go back to work," induced respondent, who could not read and could only write his name, to sign a Compromise Settlement Agreement by which he acknowledged payment of compensation benefits to that date in the sum of $321.75 and agreed to settle his claim for additional compensation benefits for the sum of $35.00. On April 25, 1952, the purported compromise settlement agreement was approved by the Industrial Accident Board.

On April 30, 1952, respondent procured from the postoffice at Sanger, Texas, where he lived, an envelope from petitioner containing a check for $35.00 and a Compromise Settlement Receipt. The face of the check contained the statement that it was "In payment of compromise settlement agreement entered into and approved by the Industrial Accident Board." On the back of the check, above the line for the signature of the payee,

was the following writing: "When Properly Endorsed This Draft Becomes and Constitutes a Receipt for Compensation Benefits Stated on the Face Hereof." The Compromise Settlement Receipt which was to be and was executed by respondent acknowledged receipt from petitioner of the sum of $35.00 "in full compromise settlement, accord and satisfaction of all compensation and claims for compensation" which he had or could have against petitioner by reason of injuries received by him. Respondent took the contents of the envelope to his bank where he endorsed the check and had it cashed by an employee of the bank who signed the Compromise Settlement Receipt as a witness to respondent's signature. Shortly thereafter respondent, being physically unable to continue to do the heavy work to which he was assigned, left his employment permanently. On January 20, 1953 this suit was filed.

Respondent seeks to set aside the Compromise Settlement Agreement and the Compromise Settlement Receipt on the ground that the same was procured by fraud. His contention with respect to the Compromise Settlement Agreement signed by him on April 22nd is that he was unable to read it and that he was induced to sign it by the false representation of petitioner's adjuster that it was only a "release to go back to work." His contention with respect to the Compromise Settlement Receipt executed by him at the time he received and cashed the check for $35.00 on April 30th is set out in a trial amendment as follows: "Plaintiff alleges that due to his unlettered condition and his illiterate condition Defendant was under a duty 'to inform him of what he was asked to sign, but that in furtherance of the fraud and as a part of said fraud previously perpetrated on plaintiff, defendant did not even send a covering letter or an explanatory letter, although defendant required said release to be witnessed, and had such letter been sent said witness could have explained to plaintiff what he was signing." Respondent's testimony did not support his pleading that the instruments he was asked to sign on April 30th were in furtherance of or a part of the fraud perpetrated on him on April 22nd. To the contrary he testified that at the time he received the check for $35.00 on April 30th he thought it was for back compensation due him from petitioner. He testified further that he did not know what the papers were that were attached to the check and made no inquiry with respect thereto.

Assuming that the evidence is such as to support the presumed finding of the trial court that respondent's execution of the Compromise Settlement Agreement on April 22nd was pro-

cured by fraud the judgments of the courts below must, nevertheless, be reversed and judgment be rendered for petitioner. There is absolutely no evidence showing or tending to show any fraud on the part of petitioner or its agents or representatives in inducing respondent to accept and cash the check for $35.00 and execute the Compromise Settlement Receipt on April 30th.

It is to be noted that respondent does not contend that any false representations were made to him by petitioner on April 30th to induce him to cash the check and execute the Compromise Settlement Receipt. On the contrary, his pleading is that the cashing of the check and execution of the Compromise Settlement Receipt were the result of the conduct of petitioner in preying on his ignorance by failing to send him a covering and explanatory letter. Moreover, his testimony is that he thought the check represented payment of past due compensation benefits.

Petitioner was under no duty to send along an explanatory letter or to otherwise explain the contents of the Compromise Settlement Receipt and the notations on the check. Those instruments were plain, clear and unambiguous and if respondent endorsed the check and signed the receipt without knowing or ascertaining their contents that dereliction cannot be charged to petitioner. Respondent's illiteracy will not relieve him of the consequences of his contract. Indemnity Ins. Co. of North America v. Macatee & Sons, 129 Texas 166, 101 S.W. 2d 553, 557. Inasmuch as respondent has wholly failed to plead or prove grounds for invalidating his release of April 30th the same is a bar to the recovery of additional compensation benefits and it is immaterial that he was induced by fraud to execute the Compromise Settlement Agreement. Traders & General Ins. Co. v. Bailey, 127 Texas 322, 94 S.W. 2d 134, 135; Texas Emp. Ins. Ass'n. v. McDaniel, Texas Civ. App., 286 S.W. 2d 465, 469-470, no writ history.

Respondent contends in this Court that the grounds on which we have decided the case in favor of petitioner were not preserved by petitioner or presented in any point of error in the Court of Civil Appeals. Petitioner's first point of error in its brief in the Court of Civil Appeals was as follows: "The trial court erred in setting aside the compromise settlement agreement entered into by the defendant and plaintiff because there was no evidence of actionable fraud on the part of the defendant." Under this point of error petitioner argued that there was no evidence that it or its agents or representatives fraudulently induced respondent to execute the Compromise Settlement

Agreement on April 22nd, and argued, also, that there was no evidence that it or its agents or representatives fraudulently induced the cashing of the check and the execution of the Compromise Settlement Receipt on April 30th.

In support of the foregoing statement we quote from petitioner's brief in the Court of Civil Appeals, as follows: "It is the position of the defendant that the action taken by the plaintiff on April 30, 1952, was sufficient: first, to confirm the original action on his part in executing the compromise settlement agreement; second, to show he placed no reliance on the alleged representation of Mr. Coleman; and, third, *to again release the defendant from any claim for compensation because of any injuries the plaintiff might have sustained on or about January 5, 1952;*" and further: "What is more important, however, is the fact that nowhere in the record is there a scintilla of evidence that the plaintiff relied on anything that any representative of the defendant told him when he signed the $35.00 check and the compromise settlement receipt on April 30, 1952."

It is true that in its brief in the Court of Civil Appeals petitioner had a point of error by which it asserted that "The trial court erred in failing to hold that plaintiff was estopped from denying the validity of the compromise settlement agreement admittedly entered into with defendant," and that the Court of Civil Appeals overruled that point. It appears not to be true, however, that petitioner waived any right it may have had to contend that the endorsement and cashing of the check and the execution of the Compromise Settlement Receipt on April 30th were not induced by fraud and that they operated to bar respondent's right to seek further compensation benefits.

The judgments of the Court of Civil Appeals and trial court are reversed and judgment is here rendered that plaintiff take nothing by his suit.

Opinion delivered October 24, 1956.

Rehearing overruled November 21, 1956.