James L. MASON, Jr., Appellant,

v.

MID-CONTINENT SUPPLY COMPANY, Appellee.

No. 16474.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 17, 1964.

Rehearing Denied Feb. 14, 1964.

Harrison, McKnight & Dean, and Bill M. McKnight, Dallas, for appellant.

Cantey, Hanger, Gooch, Cravens & Scarborough, and Sloan B. Blair, Fort Worth, for appellee.

LANGDON, Justice.

This is a summary judgment case. The appellee Mid-Continent Supply Company sued appellant James L. Mason, Jr., to recover an unpaid balance of $98,000.00 alleged to be past due and owing on a series of 36 promissory notes which originally totalled the sum of $108,000.00, and for foreclosure of its chattel mortgage lien on two drilling rigs which secured the payment of such notes. Appellee's ownership of the notes and chattel mortgage, the execution thereof by appellant, and the balance due according to the face thereof, are all matters which were uncontroverted in the pleadings and appellee was prima facie entitled to judgment unless material fact issues were raised in appellant's pleadings as to any valid defenses. Appellee's motion for summary judgment was granted. Appellant contends the trial court erred because the state of the record on November 1, 1962, clearly showed that genuine issues of fact existed. His second and third points are based on the court's refusal to consider supplemental affidavits filed late and in refusing to consider appellant's first amended original answer filed after the hearing on the motion for summary judgment. We affirm.

A chronological history of events leading up to the suit will more clearly define the issues.

Appellant, a graduate geologist who had been in the oil business for years with experience in drilling, decided to go into the drilling business with Mr. Julian Howell.

After looking at several rigs and having no particular type rig in mind he came in contact with a representative of the appellee who showed him rigs available for sale. Appellant decided to buy two rigs. He came to appellee's office in Fort Worth to sign necessary papers covering his purchase. A letter agreement was prepared reciting that appellant agreed to purchase both rigs for $90,000.00. He was to pay $9,000.00 down. The balance of $81,000.00 was scheduled into 32 notes, each in the sum of $2,500.00 and one in the sum of $1,000.00. The agreement provides that the rigs were sold on an "as is, where is" basis, with no warranty either express or implied as to the operation or condition of the rigs. The agreement further recited that, "It is agreed there are no representations, agreements or conditions other than specifically stated herein." Appellant signed the agreement at about the time he took possession of the rigs. Appellant accepted, agreed to and signed the agreement on August 28, 1961. He made no suggestions as to any additions, deletions or revisions thereto although the agreement provides that the instrument might be changed by agreement of the parties to it. Further the record reflects that Julian Howell made an independent examination of the rigs before appellant took possession of them or signed the letter agreement and certainly long before the notes were signed. The notes are dated September 1, 1961. They were actually signed, "quite some time later," according to appellant. It is uncontroverted that they were actually signed on October 24, 1961, the date of the acknowledgment on the chattel mortgage.

In considering the issues involved in this case it is important to keep in mind that it is not based upon the letter agreement but is a suit to collect the unpaid balance due and payable on the notes and foreclosure of the chattel mortgage lien. Thus the alleged fraud and misrepresentation concerning the condition of the rigs and the amount of money required to put them in good operative condition which appellant claims to have relied upon in signing the agreement would not effect the validity of the notes or the mortgage lien. They were signed at a later date and at a time when appellant according to his own admissions was fully aware of the facts and circumstances he alleges as fraud and misrepresentation inducing him to sign the letter agreement. Associated Employers Lloyds v. Howard, Sup.Ct., 156 Tex. 277, 294 S.W. 2d 706 and authorities cited therein.

There is no valid or controlling evidence or pleadings concerning any fraud inducing the appellant to sign the notes and the mortgage lien. The instruments were clear, plain and unambiguous. The notes were complete and regular upon their face and unconditional. By signing them he became liable for the payment thereof and in effect confirmed the letter agreement clearly indicating that he placed no reliance upon the alleged fraud and misrepresentations which he claimed to have relied upon in executing such agreement. There is no valid evidence indicating that appellant relied upon anything that any of appellee's representatives may have told him when he signed the notes and mortgage lien in October, 1961.

The appellant in substance contends that it was represented to him that $1,500.00 would be the maximum expenditure necessary to correct any defects in the rigs. In the face of this contention he signed notes totaling $108,000.00, some $27,000.00 more than the $81,000.00 representing the balance of the purchase price. The explanation for this contradiction is explained by appellant's own deposition. "Thus it appears affirmatively that his claim stated on paper became completely disintegrated when exposed to the light of his own deposition." Bennett v. Flanigon, 7 Cir., 220 F. 2d 799. In his deposition he stated that the additional $27,000.00 was for normal costs of repairs on the two rigs which were unknowns and that when he signed the notes he knew that the $1,500.00 figure was not right and that the cost of repairs would be at least $27,000.00. He stated that at the time he signed the notes he was

not relying on any $1,500.00 representation as to what it would take to put the rigs in operating condition. He added, "It was obvious at that point that it would cost more. That is true."; and "I don't know what I was relying on at that point."

■ It is fundamental that before fraud can be set up, either as the basis of a claim or defense, it must appear that the claimed representations were relied upon.

■ As stated in 25 Tex.Jur.2d, Fraud and Deceit, § 27, p. 651, et seq.: "It is a general rule that where false and fraudulent representations are made concerning the subject matter of a contract, but the person to whom they are made, before closing the contract or before the time for payment arrives, inspects and examines the subject of the contract or conducts an investigation into the matter sufficient to inform him of the truth, it is presumed that he places his reliance on the information acquired by the investigation and on his own judgment based on the facts, rather than on the representations." Here it is conclusively established by appellant's own admissions that by the time he signed the notes his operator, Mr. Howell, had thoroughly inspected the rigs and that he (appellant) had already run up a $27,000.00 bill for repairs. The same text continues as follows at page 653: "Inasmuch as a representation that is known to be false cannot deceive, redress will not be awarded to a person who had knowledge of the falsity of the representations when he entered into the transaction. It is imperative that the party claiming to have been defrauded believed the false representations when he acted. * * * Similarly, there can be no legal defense based on fraud if the facts concerning the fraud become fully known before the contract is executed. A person is precluded from recovery on account of his knowledge of the fraud only where the contract was wholly executory at the time of discovery, or, in other words, where he did not change his position for the worse."

■■ In the case at bar, appellant has expressly admitted that he was no longer relying upon the alleged misrepresentations at the time he signed the notes sued upon, and that he then had as much knowledge as did appellee about what it was going to cost to put the rigs in the condition desired. Such admissions are binding upon him. He cannot avoid summary judgment by broad conclusions of law set forth in his pleadings and affidavits.

The appellant admittedly owed certain money to appellee on open account in addition to the sum owed on the notes. He contends by pleading and affidavit that a representative of appellee fraudulently represented to him, (1) that appellee would not accept payments upon the notes unless he also made payment upon the open account to be credited as appellee might see fit and that said representative refused a tender of a $12,000.00 payment on the notes and that because of such refusal was estopped to accelerate its notes; (2) that appellee's agent told him that if he would apply the $12,000.00 payment to the open account he need not worry about the notes. That further action on the notes would be suspended and (3) that in reliance upon this he changed his position to his detriment by allowing the $12,000.00 payment to be applied to the open account.

Once again in exposing appellant's claims to the light of his deposition they disintegrate. In his deposition the appellant in testimony covering some six pages admits that he not only knew but that he agreed when he tendered the $12,000.00 that it would be applied to the open account, subject to later determination as to which portion of the account it would be applied. At another point in his deposition the appellant admitted that appellee's agent never told him that he would not have to pay the notes.

In our opinion the statement that he would not have to worry about the notes, even if true, would not constitute a defense because there is no contention that

appellant did not owe the money on open account and the appellee would have the right to insist that such account be kept current before accepting prepayments on the notes.

We next consider the appellant's points based on the court's refusal to consider the supplemental affidavits and appellant's first amended original answer filed after the hearing on the motion for summary judgment. Recitations contained in the trial court's judgment which are unchallenged reflect a continued effort on the part of appellant to change the record as it existed on November 1, 1962, when the motion was heard.

The judgment reflects that the appellee's motion for summary judgment was filed September 17, 1962, and on the same date set for hearing October 2, 1962. All notice required by Rule 166–A was given. Hearing on the motion was twice postponed at appellant's request although appellant had filed his verified answer supported by his own affidavit on October 1, 1962.

On October 19, 1962, the hearing was held by agreement of the parties. At that time appellant announced ready subject to his request to obtain affidavits of persons he had been unable to procure because of geographic impediments and difficulty in tracing such persons. The trial court granted additional time through November 1, to obtain these affidavits. Obviously it was not the purpose of the court to permit additional affidavits by the appellant and his employee although there is nothing in the record to indicate that the court would not have considered them had they been filed on November 1, 1962, within the time prescribed by the court. The affidavit of a distant witness who resided in Illinois filed on November 1, 1962, was considered by the court whereas the affidavits of appellant and his employee filed on November 2, 1962, were not. The appellee's motion to strike the affidavits, which was sustained by the court, was based on the contentions

that same were filed too late and were not from distant witnesses who were difficult to locate and hence not within the scope of the court's order extending the time to November 1, 1962.

In Surkin v. Charteris (Fifth Circuit), 197 F.2d 77, the Federal Court, construing Rule 56 F.R.Civ.P., held: "Nor do we agree with the appellant's contention that the trial court abused its discretion in denying their motion for leave to serve opposing affidavits two days after oral argument on the motion was heard. Rule 56 provides that the motion shall be served at least 10 days before the time fixed for the hearing and that the opposing party, prior to the day of hearing, may serve opposing affidavits. Here, the motion for summary judgment was filed on December 20, 1950, and on December 22nd the plaintiffs were notified that a hearing on the motion would be had on January 16, 1951. Thus it is obvious that the plaintiffs had far more than the requisite notice."

While the Surkin case, supra, is not binding upon this Court, it is certainly persuasive, particularly since Rule 166–A was patterned from, and is almost identical with, Federal Rule 56. The record in a case must close at some stage in the proceeding. The trial court, absent an abuse of discretion, may determine when the record will close. The action of the trial court in this case was not unreasonable.

■ The case of St. John v. Fitzgerald (Tex.Civ.App., Eastland), 281 S.W.2d 201, relied upon by the appellant is readily distinguishable. There the affidavit conflicted with the deposition testimony. The court simply held that the party resisting the motion for summary judgment had the right to explain or to contradict by affidavit his deposition testimony. In that case the affidavit set forth facts which would have been admissible at a trial. Here the contentions in appellant's first affidavit does not indicate that appellant was relying upon any representations at the time he signed the notes, and that the statements contained in his supplemental affidavit and pleading

would not have been competent or admissible to impeach the notes he signed. It is fundamental that, to be effective, affidavits in a summary judgment proceeding must "set forth such facts as would be admissible in evidence * * *." Rule 166–A(e)

On December 8, 1962, while the trial court had the motion for summary judgment under advisement the appellant filed his first amended answer. While it was not considered by the trial court it was not stricken. It was timely filed for consideration in a trial on the merits but not in time to be considered in connection with the motion for summary judgment, heard by the court two months earlier.

Rule 166–A, expressly provides that opposing affidavits be filed prior to the date of the hearing. The rule contains ample provisions for the protection of the litigants where it appears to the trial court that some modification of the literal requirements of the rule is required in the interest of justice. The Rule provides in subparagraph (e) that "The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits." In subparagraph (f) the Rule authorizes the court to permit affidavits for depositions to be obtained after the hearing, and to make such other order as is just. Clearly, the Rule contemplates that the trial court will have broad discretion in setting reasonable deadlines in summary judgment proceedings, as in other matters pending before it. In our opinion the trial court was within his discretion in setting and adhering to the November 1, 1962 deadline, particularly in view of the fact that appellee's motion for summary judgment had been filed September 17 and had been twice postponed at appellant's request. Further the appellant has not shown good cause why his own affidavit and that of his employee could not have been timely filed. On February 18, 1962, after judgment had been rendered, and after appellee's objections to the affidavits and the court's order sustaining same had been filed, the appellant filed his amended motion

for new trial to which he attached an affidavit stating that the late filing of the supplemental affidavits was because he was outside Texas from October 19 to 29, 1962. It is our opinion that: (1) the purported showing of good cause itself came too late, after judgment; (2) appellant still has not explained why his own affidavit could not have been filed prior to October 19, 1962, which was over a month after the time appellee's motion was filed; (3) the trial court's order extending the time to November 1 related only to the affidavits of distant witnesses and did not encompass an affidavit by appellant or his employees; and (4) failure to have timely filed such affidavits suggests a lack of diligence to comply with the court's order extending hearing to November 1, 1962.

In Rountree v. Bridwell, Tex.Civ.App., 269 S.W.2d 824, writ ref., n. r. e., the San Antonio Court in an opinion by Judge Norvell held: "The trial judge did not abuse his discretion in refusing to consider the affidavits tendered as exhibits to plaintiffs' motion for new trial. These affidavits should have been filed prior to the hearing upon the motion for summary judgment. Further, it does not appear that a consideration of such affidavits would affect the disposition of the case."

The above case is particularly applicable here as the supplemental affidavit of the appellant was cumulative of matter considered by the court and the employee's affidavit was to the effect that he was familiar with what appellant had said and same was true. Neither affidavit would therefore have affected the trial court's disposition of the case.

In Jones v. Hubbard, Tex.Civ.App., 302 S.W.2d 493, writ ref., n. r. e., the court held that it was within the trial court's discretion to refuse to consider affidavits and material filed after hearing of summary judgment. To the same effect see Oaxaca v. Lowman, Tex.Civ.App., 297 S.W.2d 729, writ ref., n. r. e., citing Rule 166–A, Texas Rules of Civil Procedure; Haley v. Nickels,

Tex.Civ.App., 235 S.W.2d 683; Fowler v. Texas Employers' Ins. Ass'n., Tex.Civ.App., 237 S.W.2d 373, in which case writ of error was refused outright.

In Dipp v. Rio Grande Produce, Inc., Tex. Civ.App., 330 S.W.2d 700, writ ref., n. r. e., the court, noting that evidence tendered as part of an amended motion for new trial came too late, held as follows: "In any event, this is a summary judgment matter and, as such, the trial court is charged with the duty of considering only the record as it appears before the court at the time of the hearing of the motion for summary judgment (citing Rule 166–A and cases)."

The foregoing cases stand for the proposition that the trial court has the right to affix reasonable time limits on the filing of affidavits, and to insist upon compliance therewith, and with the other provisions of Rule 166–A. The trial court should be able to take a matter under advisement without having the record as it existed at the time of the hearing shift and change from day to day.

Additionally, it would appear unfair to the moving party who has exercised diligence in conforming with all provisions of the rule to permit the opposing party to change the record.

The summary judgment procedure could be completely frustrated if a party, after the hearing on the motion, having been confronted with the fact that by his own deposition he completely destroyed his position, were to be permitted to prevent summary judgment by the simple expedient of filing an affidavit.

At the hearing on November 1, 1962, the appellant was confronted with his own admissions. Seeking to extricate himself from his untenable position he filed his amended answer on December 8, 1962, in which he alleged that he had been told by appellee that if he would sign the notes he would not have to pay them to the extent that the notes represented cost of repairs.

The supplemental affidavits and the appellant's first amended answer set forth nothing more than a claimed promise on the part of appellee to do something in the future, i. e., bear the expense of repairs to the rigs, and such allegations and statements on their face do not amount to fraud and even though considered by the court would not have raised a fact issue.

As stated in 25 Tex.Jur.2d, Fraud and Deceit, § 44, p. 682: "It is frequently declared to be the general rule of this state that the failure to discharge a promise of something to be done in the future is not fraud, and that, to be actionable, a false representation must be of a past or existing fact, rather than a promise, even though the promise is, without any excuse, subsequently broken. It has been said that this is true even if the promise is made to induce the other person to enter into the contract, inasmuch as otherwise every breach of contract would amount to fraud. It should be noted, however, that a statute now includes within the definition of fraud connected with real estate and certain security transactions, a false promise made as a material inducement and but for which the other party would not have entered the transaction."

While a promise made with a preconceived intention not to perform may amount to fraud, no such statement is made by appellant in his supplemental affidavit. Moreover, his deposition testimony abundantly shows that he knew that he would have to bear the expense of putting the rigs in order at the time he signed the notes.

Under the authorities the assertions made in the supplemental affidavit would not be admissible in evidence. In Jones v. Hubbard, 302 S.W.2d 493, writ ref., n. r. e., the court, affirming a summary judgment in favor of plaintiff on a note, held as follows: "Defendants assert that the note was executed because of a representation by plaintiff that he would not hold defendants personally liable thereon, and that he want-

ed the note to show a loss on his income tax return. Rule 166–A Texas Rules of Civil Procedure provides that the affidavits 'shall set forth such facts as would be admissible in evidence.' Defendants' assertions as to the alleged misrepresentations of plaintiff would not be admissible in evidence under the parol evidence rule, and therefore have no weight in summary judgment practice. A promissory note cannot be contradicted by parol representations of the payee that the maker would not be held liable thereon. 6 Tex.Jur. 956; Dean v. Allied Oil Co., Tex.Civ.App., 261 S.W.2d 900, Er.Dis.; Bowden v. Partners' Finance, Tex.Civ.App., 278 S.W.2d 866." And in the same case, the court observed as follows: "The cases are numerous where summary judgments have been upheld where the issues were issues which are usually questions of fact but where the admissible evidence establishes the issues as matters of law. See: Edwards v. Williams, Tex.Civ.App., 291 S.W.2d 783; Westfall v. Lorenzo Gin Co., Tex.Civ.App., 287 S.W.2d 551; Oaxaca v. Lowman, Tex.Civ.App., 297 S.W.2d 729."

In the recent case of Steve Lynn Motor Company, Inc. v. Pavelka (Tex.Civ. App.), 371 S.W.2d 928, after saying it was immaterial whether the plaintiff was a holder in due course of the notes sued upon, proceeded to hold as follows: "The plea that the payee would not sue or press for collection is tantamount to the allegation of an agreement that the maker would not be required to pay the notes or would not be liable thereon. Even if attempted to be raised as a defense without exception, parol evidence thereof was without probative force and is to be disregarded. (Citing authorities). 'An agreement not to enforce or sue upon the instrument at all must be equally ineffective.' IX Wigmore, Evidence (3rd ed.) Sec. 2444, p. 144." The foregoing language emphasizes the distinction between a suit on promissory notes and one upon a sales contract. The appellant will not be permitted to repudiate or impeach his own notes by parol evidence. The above case and the authorities therein cited also dis-

pose of appellant's contentions that a representative of appellee told him he need not worry about the notes, or that he would not be pressed for the payment thereof. Such evidence would have been inadmissible on a trial of the case and, accordingly, cannot be considered as competent evidence to defeat appellee's right to summary judgment.

All points of error are accordingly overruled and the judgment of the trial court is affirmed.

Affirmed.