COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 DELFINGEN US-TEXAS, L.P.,
  
                                    
 Appellant,
  
 v.
  
 GUADALUPE VALENZUELA,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-12-00022-CV
  
                          Appeal from
  
 County Court at Law
 No. 3
  
 of El Paso County,
 Texas
  
 (TC # 2011-251)
 
 


 

 

O P I N I O N

 

Delfingen US-Texas, L.P.
has brought this accelerated appeal from an order denying its motion to compel
arbitration.  For the reasons that
follow, we affirm.

FACTUAL SUMMARY

Delfingen
specializes in the design and manufacture of wiring harnesses and other plastic
components for the automotive industry.  Guadalupe
Valenzuela worked as a temporary employee for Delfingen for about four months
in El Paso, Texas being hired as a permanent employee on May 5, 2008.  She is unable to read English.  On May 7, 2008, Valenzuela attended an
orientation session for new employees conducted by Maria Guzman, Delfingen’s
human resources representative.  Guzman
conducted the entire orientation session in Spanish.  At the conclusion of the meeting, Valenzuela
signed several documents which were in English, including the “Dispute
Resolution and Arbitration Policy and Agreement”.  By signing the Agreement, Valenzuela
acknowledged she had read the document and “agree[d] to submit to final and
binding arbitration any and all claims and disputes that are related in any way
to my employment or the termination of my employment with Delfingen.”  

On
January 24, 2011, Valenzuela filed suit against Delfingen alleging she was
wrongfully terminated because she pursued workers’ compensation benefits after
suffering an on-the-job injury. 
Delfingen filed a motion to stay proceedings and compel arbitration
based on the Agreement.  In her response,
Valenzuela alleged that the Agreement is procedurally unconscionable because it
was never explained to her in Spanish and she was “rushed to sign the
document.”  Valenzuela’s affidavit is
attached to the response and avers that:

I
was hired by Delfingen U.S.-Texas, L.P. to be a vent tube assembler in May
2008.  The only language I can communicate
in is Spanish.  I cannot read English.  My employer knew this and hired me for the
job.  When I was hired my employer
presented many forms to me for signature. 
All of the forms were written in English.  I understand now that one these [sic] forms
may have been the DISPUTE RESOLUTION AND ARBITRATION POLICY AND AGREEMENT.  This form was not explained to me nor was it
made available to me in Spanish so I could evaluate it and make a decision to
accept it or reject it.  I had no idea
that I was waiving my constitutional rights to bring statutory and common-law
claims against my employer in a court of law. 
Delfingen U.S.-Texas, L.P. never explained to me that I was entering
into such an agreement.

 

Maria
Guzman was the person who was telling me to fill out the forms.  She told me that she was going to explain
only the important parts of the paperwork. 
Because I do not understand English, I was at a disadvantage while going
through the paperwork, as I had no means to determine for myself what the
important parts of the paperwork were. 
However, I took Ms. Guzman’s word that everything important was being
translated for me by her.  Ms. Guzman
translated the policies of Delfingen U.S.-Texas, L.P. with regard to
attendance, tardiness, and punctuality in detail.  At the end of the process of completing all
of the paperwork, Ms. Guzman asked me if I had any other questions.  I asked her some more questions about the
attendance policy, but I had no idea that there had been a waiver of the right
to bring my employer to court in the event of a dispute.  Ms. Guzman did not mention the arbitration
agreement or what it meant.  I would have
definitely asked for more information about this policy had I known that it was
something that I had been coerced and fraudulently induced into signing.  

 

I
understand that this is a substantially equal version of the affidavit I gave
in Spanish, and this version has been read and translated to me.[1]  

 

Delfingen
filed a written reply to Valenzuela’s response contending that the inability to
speak or read English does not invalidate the Agreement.  It also challenged Valenzuela’s assertions
that Guzman did not explain the arbitration agreement to her in Spanish and
that Valenzuela is unable to read English. 
Delfingen supported its reply with Guzman’s affidavit:

2.  All new employees hired by Delfingen must
attend a new employee orientation.  The
purpose of the orientation is to provide all new employees with information
about the company’s policies and procedures. 
I am in charge of conducting the new employee orientation sessions which
take place at Delfingen’s El Paso, Texas location.  Orientation sessions are typically conducted
in groups of the employees recently hired. 
Sometimes, we hire employees whose native or first language is
Spanish.  I am fully bilingual, and,
therefore, when I conduct the orientation sessions, I explain all of the
company’s policies in both English and Spanish. 
As I explain each policy, I make it a point to ask the employees whether
they have any questions.

 

3.  Delfingen has an arbitration policy which
requires both the company and the employee to resolve employment-related
disputes through the arbitration process. 
During the orientation sessions, new employees are presented with the
arbitration agreement for their signature. 
I explain the company’s arbitration policy to the employees in both
English and Spanish and always ask if they have any questions about it.

 

4.  Guadalupe Valenzuela is a former employee of
Delfingen.  Ms. Valenzuela was hired on
or about May 5, 2008 and attended the new employee orientation held on May 7,
2008.  I specifically recall Ms.
Valenzuela being present at this orientation. 
Ms. Valenzuela and a couple of other employees in this orientation
session, including a new hire by the name of Nancy Colorado, were not native
English speakers.  During the May 7, 2008
session, I recall explaining all of the company’s policies in English and
Spanish including the arbitration policy. 
When I asked if anyone had questions about the arbitration policy, Ms.
Valenzuela did not say anything.  

 

The trial court
initially denied the motion to compel arbitration, but at Delfingen’s request
and with Valenzuela’s agreement, the court withdrew that order and conducted an
evidentiary hearing.[2]  At that hearing, only Valenzuela and Guzman
testified.  Valenzuela testified that she
understood “very little” English.  She
admitted signing the Arbitration Agreement. 
When asked whether she could read it, Valenzuela said she could read it
but she could not understand it.  Valenzuela
recalled that Guzman communicated with her in Spanish, but she only explained
the attendance policies and production requirements.  When Valenzuela signed the Agreement, she
believed she was signing the attendance policy. 
She was never told that if she signed the Arbitration Agreement, she was
waiving her right to sue her employer.  Valenzuela
specifically testified that Guzman did not trick her into signing the Agreement
but she insisted that Guzman did not explain it.  If Valenzuela had known the document she
signed was an arbitration agreement, she would not have signed it.  

On
cross-examination, Valenzuela admitted that Guzman explained company policies
other than attendance, including reporting injuries, substance abuse and
alcohol, sexual harassment, clocking-in, the standards of conduct, and
employment safety.  When Valenzuela signed
the Agreement, she thought she was signing those policies as well as the
attendance policy.  Delfingen’s counsel
then asked Valenzuela whether it was possible she was confusing the arbitration
agreement with the employee handbook which contained those policies, and she
agreed it was possible.  

Guzman
testified that Delfingen provided Valenzuela with a “new hire packet” of
documents and forms at some point prior to the beginning of the orientation
session.[3]  The packet included five documents which
required the new employee’s signature: 
(1) Delfingen’s injury reporting policy; (2) an acknowledgement that the
employee has received the Company Employee Handbook; (3) the “Dispute
Resolution and Arbitration Policy and Agreement”; (4) an acknowledgement the
employee has received a copy of Delfingen’s Safety Policies and Guidelines
Handbook; and (5) the Proprietary Information Agreement.  All of the documents are in English.

During
the orientation session, which Guzman conducted entirely in Spanish because all
of the new employees were Spanish-speakers, Guzman informed Valenzuela and the
other new employees about the company’s policies and procedures.  With respect to the Arbitration Agreement,
Guzman explained that “as an employee, you’re waiving your rights to take any
dispute to Court and you handle it within the company, with an arbitrator . . .
.”  At the conclusion of the meeting,
Guzman met with each new employee individually and went over the paperwork with
them before they signed those documents which required a signature.  Valenzuela did not ask any questions and signed
the Agreement.  

            The trial court signed an order
denying Delfingen’s motion to compel arbitration.  Delfingen filed notice of accelerated
appeal.  

PROCEDURAL UNCONSCIONABILITY

            In its sole issue on appeal, Delfingen
contends that Valenzuela failed to meet her burden of showing that the arbitration
agreement is procedurally unconscionable. 
Valenzuela responds that she met her burden of proof because there is
evidence that Delfingen affirmatively misrepresented the nature of the
arbitration agreement.  Additionally,
Valenzuela argues that procedural unconscionability exists in this case because
she was “the weaker party in the atmosphere in which the arbitration agreement
was obtained.”  More specifically, she
asserts that the agreement is in English and Delfingen did not provide or
explain it to her in Spanish.  

Applicable Law

A
party seeking to compel arbitration must (1) establish the existence of a valid
arbitration agreement; and (2) show that the claims asserted are within the
scope of the agreement.  See In re AdvancePCS Health L.P., 172
S.W.3d 603, 605 (Tex. 2005); Inland Sea,
Inc. v. Castro, --- S.W.3d ----, 2012 WL 1715242 at *2 (Tex.App.--El Paso
2012, pet. filed).  It is undisputed that
the FAA is applicable to the Agreement at issue here.  Section 2 of the FAA provides that
arbitration agreements “shall be valid, irrevocable, and enforceable, save upon
such grounds as exist at law or in equity for the revocation of any contract.” 9
U.S.C.A. § 2 (West 2009).  Thus, under
the FAA, ordinary principles of state contract law determine whether there is a
valid agreement to arbitrate.[4]
 In
re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 739 (Tex. 2005); Inland Sea, Inc. v. Castro, --- S.W.3d
----, 2012 WL 1715242 at *2.  Once the
party seeking to compel arbitration proves that a valid arbitration agreement
exists, a presumption attaches favoring arbitration and the burden shifts to
the party resisting arbitration to establish a defense to enforcement.  Inland
Sea, Inc. v. Castro, --- S.W.3d ----, 2012 WL 1715242 at *2; see In re AdvancePCS, 172 S.W.3d at 607.  In the context of enforcement, defenses refer
to unconscionability, duress, fraudulent inducement, and revocation. In re FirstMerit Bank, N.A., 52 S.W.3d
749, 756 (Tex. 2001); IHS Acquisition No.
171, Inc. v. Beatty-Ortiz, --- S.W.3d ----, 2012 WL 1658644 at *7
(Tex.App.--El Paso 2012, no pet.).  Because
the law favors arbitration, the burden of proving a defense to arbitration is
on the party opposing it.  IHS Acquisition No. 171, Inc. v. Beatty-Ortiz,
--- S.W.3d ----, 2012 WL 1658644 at *7, citing
J.M. Davidson, Inc., 128 S.W.3d at 227.

            Agreements to arbitrate disputes
between employers and employees are generally enforceable under Texas law.  In re
Poly-America, L.P., 262 S.W.3d 337, 348 (Tex. 2008).  There is nothing per se unconscionable about an agreement to arbitrate employment
disputes and Texas law has historically favored agreements to resolve such
disputes.  Id.  But an arbitration
agreement is invalid if it is unconscionable. 
See In re Palm Harbor Homes, Inc.,
195 S.W.3d 672, 677-79 (Tex. 2006); In re
Halliburton Company, 80 S.W.3d 566, 572 (Tex. 2002).

            Texas recognizes both procedural and
substantive unconscionability.  In re Olshan Foundation Repair Company, LLC,
328 S.W.3d 883, 892 (Tex. 2010).  Substantive
unconscionability refers to the fairness of the arbitration provision itself,
whereas procedural unconscionability refers to the circumstances surrounding
adoption of the arbitration provision.  In re Olshan Foundation Repair, 328
S.W.3d at 892; In re Palm Harbor Homes,
195 S.W.3d at 677; see TMI, Inc. v.
Brooks, 225 S.W.3d 783, 792 (Tex.App.--Houston [14th Dist.] 2007, pet.
denied)(procedural unconscionability relates to the making or inducement of the
contract, focusing on the facts surrounding the bargaining process).  Valenzuela’s defense is restricted to
procedural unconscionability.  

“Unconscionability”
has no precise legal definition because it is not a concept but a determination
to be made in light of a variety of factors.  Southwestern
Bell Telephone Company v. DeLanney, 809 S.W.2d 493, 498 (Tex. 1991)(Gonzalez,
J. concurring); Arthur’s Garage, Inc. v.
Racal-Chubb Security Systems, Inc., 997 S.W.2d 803, 815 (Tex.App.--Dallas
1999, no pet.).  In determining whether a
contract is unconscionable, we must examine (1) the “entire atmosphere” in
which the agreement was made; (2) the alternatives, if any, available to the
parties at the time the contract was made; (3) the “non-bargaining ability” of one
party; (4) whether the contract was illegal or against public policy; and (5)
whether the contract is oppressive or unreasonable.  Ski
River Development, Inc. v. McCalla, 167 S.W.3d 121, 136 (Tex.App.--Waco
2005, pet. denied).  The totality of the
circumstances must be assessed as of the time the contract was formed.  Ski
River, 167 S.W.3d at 136; El Paso
Natural Gas Company v. Minco Oil & Gas Company, 964 S.W.2d 54, 60-61
(Tex.App.--Amarillo 1997), rev’d on other
grounds, 8 S.W.3d 309 (2000).  The
grounds for substantive abuse must be sufficiently shocking or gross to compel
the court to intercede, and the same is true for procedural abuse--the
circumstances surrounding the negotiations must be shocking.  Ski
River, 167 S.W.3d at 136; El Paso
Natural Gas Co., 964 S.W.2d at 62. 

Standard of Review

The
trial court’s determination of the arbitration agreement’s validity is a legal
question subject to de novo review.  J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003); Inland Sea, Inc. v. Castro, --- S.W.3d
----, 2012 WL 1715242 at *2.  Whether a
contract is unconscionable at the time it is formed is also a question of law which
is reviewed de novo.  In re
Poly-America, L.P., 262 S.W.3d at 348-49; Hoover Slovacek LLP v. Walton, 206 S.W.3d 557, 562 (Tex. 2006); Ski River, 167 S.W.3d at 136.  The determination of the facts relevant to the
question of unconscionability is, however, a question for the trial court.  Besteman
v. Pitcock, 272 S.W.3d 777, 788 (Tex.App.--Texarkana 2008, no pet.).  

Delfingen
met its initial burden of showing that an agreement to arbitrate exists and
Valenzuela has never disputed that her claim falls within its scope.  Consequently, the presumption favoring
arbitration attached and the burden shifted to Valenzuela to establish her
defense of procedural unconscionability. 
Delfingen argues that Valenzuela failed to meet her burden and that the
evidence does not support a determination that the arbitration agreement is
procedurally unconscionable.  Delfingen
takes the position that we must review the trial court’s fact findings under
the no evidence or legal sufficiency standard. 
Valenzuela responds that we must engage in an abuse of discretion
analysis and defer to the trial court’s fact findings if they are supported by
the record.  The parties agree that
unconscionability is a question of law subject to de novo review but they disagree regarding the standard to be
applied to the trial court’s relevant fact findings. 

Delfingen
has brought this interlocutory appeal pursuant to Section 51.016 of the Civil
Practice and Remedies Code.  Tex.Civ.Prac.&Rem.Code Ann. § 51.016
(West Supp. 2012).  Prior to the
effective date of that statute, September 1, 2009, an order denying a motion to
compel arbitration under the FAA could not be challenged in an interlocutory
appeal.  Cleveland Construction, Inc. v. Levco Construction, Inc., 359
S.W.3d 843, 851 (Tex.App.--Houston [1st Dist.] 2012, pet. dism’d), citing In re Merrill Lynch & Company,
315 S.W.3d 888, 890-91 & n.3 (Tex. 2010)(orig. proceeding); Sidley Austin Brown & Wood, LLP v. J.A.
Green Development Corporation, 327 S.W.3d 859, 862 (Tex.App.--Dallas 2010, no
pet.), citing Jack B. Anglin Company,
Inc. v. Tipps, 842 S.W.2d 266, 272-73 (Tex. 1992).  Consequently, a party denied the right to
arbitrate pursuant to an agreement subject to the FAA did not have an adequate
remedy by appeal and was entitled to mandamus relief to correct a clear abuse
of discretion.  In re Labatt Food Service, L.P., 279 S.W.3d 640, 642-43 (Tex.2009)(orig.
proceeding).  Under that clear abuse of
discretion standard, a reviewing court is required to defer to the trial
court’s factual determinations if they are supported by the evidence and it
reviews the trial court’s legal determinations de novo.  Sidley, 327 S.W.3d at 862, citing In re Labatt, 279 S.W.3d at 643.  The Texas Supreme Court has not specifically
addressed the appropriate standard of review for interlocutory appeals under Section
51.016 of an order denying a motion to compel arbitration.  

In
interlocutory appeals of orders denying motions to compel arbitration under the
Texas Arbitration Act (“TAA”), some courts of appeals, including this court,
have held that we review the trial court’s fact findings under a legal
sufficiency or “no evidence” standard while legal conclusions are reviewed de novo.  See
e.g., McReynolds v. Elston, 222 S.W.3d 731, 739 (Tex.App.--Houston [14th
Dist.] 2007, no pet.); Tri-Star Petroleum
Co. v. Tipperary Corp., 107 S.W.3d 607, 616 (Tex.App.--El Paso 2003, pet.
denied); Fridl v. Cook, 908 S.W.2d
507, 511 (Tex.App.--El Paso 1995, writ dism’d w.o.j.); Hearthshire Braeswood Plaza Ltd. Partnership v. Bill Kelly Co., 849
S.W.2d 380, 384 (Tex.App.--Houston [14th Dist.] 1993, writ denied); Wetzel v. Sullivan, King & Sabom, P.C.,
745 S.W.2d 78, 79 (Tex.App.--Houston [1st Dist.] 1988, no writ).  When the facts are undisputed, the court
reviews the legal conclusions de novo.
 See
McReynolds, 222 S.W.3d at 739.  

Other
intermediate appellate courts have held that the trial court’s order denying a
motion to compel arbitration under the TAA should be reviewed under the abuse
of discretion standard utilized when the trial court decides a matter involving
both factual determinations and legal conclusions, sometimes referred to as a
mixed question of law and fact.  See e.g., Chambers v. O’Quinn, 305 S.W.3d 141, 146 (Tex.App.--Houston [1st
Dist.] 2009, pet. denied); Pony Express
Courier Corporation v. Morris, 921 S.W.2d 817, 820 (Tex.App.--San Antonio
1996, no writ); see also State v. $217,590 in U.S. Currency, 18
S.W.3d 631, 633 (Tex. 2000)(stating that an appellate court reviews a trial
court’s ruling on a mixed question of law and fact for an abuse of discretion);
Brainard v. Texas, 12 S.W.3d 6, 30
(Tex. 1999)(holding that question whether a state agency’s action is
“unreasonable” within the meaning of Frivolous Claims Act, such that prevailing
party is entitled to litigation costs and attorney fees, is a mixed question of
law and fact subject to review for abuse of discretion), disapproved on other grounds by Martin v. Amerman, 133 S.W.3d 262,
267-68 (Tex. 2004).  Under this standard, the appellate
court defers to the trial court’s factual determinations supported by the
record and reviews legal conclusions de
novo.  $217,590 in U.S. Currency, 18 S.W.3d at 633; Chambers, 305 S.W.3d at 146-47; Pony
Express, 921 S.W.2d at 820.  The
reviewing court does not engage in its own factual review, but decides whether
the record supports the trial court’s resolution of factual matters.  $217,590
in U.S. Currency, 18 S.W.3d at 633-34.  If the record supports the trial court’s
evidentiary findings, the reviewing court is not at liberty to disturb
them.  Id. at 634.  A reviewing
court instead determines whether the trial court properly applied the law to
the facts in reaching its legal conclusion. 
Id.  It does not defer to the trial court on
questions of law.  Perry Homes v. Cull, 258 S.W.3d 580, 597-98 (Tex. 2008).  

It
is significant to the question before us that some intermediate appellate courts
have determined that this abuse of discretion standard should be used when
reviewing mixed questions of law and fact in appeals under Section 52.016.  See
e.g., Cleveland Construction, Inc. v. Levco Construction, Inc., 359 S.W.3d
843, 851 (Tex.App.--Houston [1st Dist.] 2012, pet. dism’d); Garcia v. Huerta, 340 S.W.3d 864, 868-69
(Tex.App.--San Antonio 2011, pet. filed); Sidley,
327 S.W.3d at 863; SEB, Inc. v. Campbell,
No. 03-10-00375-CV, 2011 WL 749292, at *2 (Tex.App.--Austin Mar. 2, 2011, no
pet.).  This standard has also been
applied in a non-arbitration setting where a court is addressing a defense that
a contract is unconscionable.  See Ski
River, 167 S.W.3d at 136-37; El Paso
Natural Gas Company, 964 S.W.2d at 60-61; W. Wendell Hall, Standards of Review in Texas, 38 St. Mary’s L.J. 1, 67-68 (2010).

While
the Supreme Court has not directly addressed the standard of review issue
presented in this case, it made clear in Perry
Homes v. Cull that this same abuse of discretion standard applies when
examining whether a trial court correctly determined that a party had waived
its right to arbitration by substantially invoking the litigation process.  Perry
Homes, 258 S.W.3d at 597-98 (“Under a proper abuse of discretion review,
waiver is a question of law for the court;” the court defers to a trial court’s
fact findings if they are supported by the evidence but does not defer to the
trial court on questions of law).  Given
that unconscionability, like waiver, is a legal question which is reviewed de novo by the appellate court, we
conclude that the appropriate standard of review in this case is the abuse of
discretion standard.  Accordingly, we
will not follow our prior decisions in Tri-Star
Petroleum Co. v. Tipperary Corporation, 107 S.W.3d 607, 616 (Tex.App.--El
Paso 2003, pet. denied) and Fridl v. Cook,
908 S.W.2d 507, 511 (Tex.App.--El Paso 1995, writ dism’d w.o.j.).   

Illiteracy and Misrepresentation

Valenzuela
argues that the Arbitration Agreement is procedurally unconscionable
because:  (1) she is unable to read
English and Delfingen failed to provide a Spanish translation or explain it to
her in Spanish; and (2) Delfingen affirmatively misrepresented the nature of
the arbitration agreement.  Under the
FAA, unequal bargaining power does not establish grounds for defeating an
agreement to arbitrate absent a well-supported claim that the agreement
resulted from the sort of fraud or overwhelming economic power that would
provide grounds for revocation of any contract. 
In re AdvancePCS Health L.P.,
172 S.W.3d at 608.  Likewise, claims of unsophistication and
inability to understand do not establish procedural unconscionability.  In re
Palm Harbor Homes, 195 S.W.3d at 679.

            Delfingen stipulated during the evidentiary
hearing that Valenzuela is “illiterate as to the English language.”  It is undisputed that the Arbitration
Agreement is in English and Valenzuela signed it. Although Delfingen typically
provided the “new hire” packet of documents, including the Arbitration
Agreement, to employees a couple of days before the orientation session so they
could read the documents prior to signing them, Guzman could not recall exactly
when the packet was given to Valenzuela. 
Valenzuela admitted that she was given the documents before the
orientation session and she did not ask either her daughter or son to translate
them for her even though she knew they were important.  It is undisputed that Delfingen did not
provide a Spanish translation, but Guzman testified she discussed the Agreement
at the orientation session which she conducted entirely in Spanish.  Valenzuela contradicted Guzman and said that
Guzman never discussed or explained the Arbitration Agreement.  The trial court could have disbelieved
Guzman’s testimony that she informed the new employees about the Arbitration Agreement
before they signed it.  Because this
finding is supported by the record, we are not at liberty to disturb it.

Valenzuela
did not ask anyone at the orientation session to read to her the Arbitration
Agreement or any of the other documents requiring her signature.  Valenzuela admitted that she was not forced
or pressured into signing the Arbitration Agreement and she did not ask any
questions about the documents she signed even though she was given an
opportunity to do so during the two-hour orientation session and afterwards
when she met individually with Guzman.  She
signed the documents because she wanted the job.  

Standing
alone, Valenzuela’s illiteracy in English is insufficient to establish that the
Agreement is unconscionable.  A person
who signs a contract must be held to have known what words were used in the
contract and to have known their meaning, and he must be held to have known and
fully comprehended the legal effect of the contract.  In re
Big 8 Food Stores, Ltd., 166 S.W.3d 869, 878 (Tex.App.--El Paso 2005, orig.
proceeding); Tamez v. Southwestern Motor
Transport, Inc., 155 S.W.3d 564, 570 (Tex.App.--San Antonio 2004, no pet.);
Nguyen Ngoc Giao v. Smith & Lamm,
P.C., 714 S.W.2d 144, 146 (Tex.App.--Houston [1st Dist.] 1986, no
writ).  Illiteracy is not a defense to
enforcement of a contract and will not relieve a party of the consequences of
the contract.  In re Big 8 Food Stores, 166 S.W.3d at 878; Tamez, 155 S.W.3d at 570; Vera
v. North Star Dodge Sales, Inc., 989 S.W.2d 13, 17 (Tex.App.--San Antonio
1998, no pet.).  Texas courts have for
many years held that, absent proof of mental incapacity, a person who signs a
contract is presumed to have read and understood the contract unless he was
prevented from doing so by trick or artifice. 
Associated Employers Lloyds v.
Howard, 156 Tex. 277, 294 S.W.2d 706, 708 (1956); Indemnity Insurance Company of North America v. W.L. Macatee & Sons,
129 Tex. 166, 101 S.W.2d 553, 556-57 (1937); In re Big 8 Food Stores, 166 S.W.3d at 878; Tamez, 155 S.W.3d at 570 n.3; Vera,
989 S.W.2d at 17.

We
do not consider Valenzuela’s illiteracy in a vacuum because we must determine
whether the Agreement is unconscionable based on the totality of the circumstances.  Valenzuela’s illiteracy is directly related
to her assertion that Delfingen affirmatively misrepresented the nature of the
Arbitration Agreement.  Valenzuela attested
in her affidavit that she accepted as true Guzman’s statement that she would explain
only the important parts of the paperwork. 
Valenzuela believed that Guzman was translating everything important
contained in the paperwork.  According to
Valenzuela, Guzman never mentioned the Arbitration Agreement and did not tell
Valenzuela that she had waived her right to go to court in the event of a
dispute with her employer.  Valenzuela
testified as follows:

[Q]:  Okay. 
And did [Guzman] go through and tell you what you were signing in
general?

 

[A]:  Well, she gave us a review of the most important
things in the company.  For example, if
we were to arrive late, if we were to miss work and the obligations that we had
with the company.

 

[Q]:  Does that mean attendance
policy?

 

[A]:  Yes. 
Yes.  And also that -- that there
we need to do certain quota, that’s the way they worked that. 

 

[Q]:  In other words, the
production you were required to do?

 

[A]:  Yes.

 

[Q]:  And when you signed these documents,
including this one on May 7th of 2008, was this one (referring to the
Arbitration Agreement) -- was this -- was that what you were explained?

 

[A]:  Yes.

 

[Q]:  Is that what you believed you were signing at
the time was an attendance policy?

 

[A]:  Yes, sir.

 

[Q]:  And is that what you were told that these
important documents primarily were were [sic] attendance and behavioral type
things?

 

[A]:  Yes.  It was the company’s policy that we were
signing.

 

[Q]:  Okay.  Were you ever told that if you signed this
document you would waive your right to a jury trial?

 

[A]:  No.

 

[Q]:  Were you ever told that you -- if you had a
problem with your employer you wouldn’t be able to come into a Court of Law and
argue your case in front of a judge or a jury?

 

[A]:  No.

 

[Q]:  Was the word arbitration ever
mentioned to you?

 

[A]:  I never knew what it was
until you told me.

 

[Q]:  Okay. 
And I’m not talking about what I told you.  I’m talking about when you were explained
these documents back in May of 2008.  Was
the word arbitration ever used to you?

 

[A]:  No.

 

[Q]:  So at the time you were told you were -- you
were signing important attendance policies?

 

[A]:  Yes.

 

[Q]:  And that’s what you believe
you were signing?

 

[A]:  Yes.  

 

On
cross-examination, Valenzuela admitted that Guzman explained policies other
than attendance, including reporting injuries, substance abuse and alcohol,
sexual harassment, clocking-in, the standards of conduct, and employment
safety.  When she signed the Agreement,
she thought she was signing those policies as well as the attendance
policy.  Delfingen’s counsel then asked
Valenzuela whether it was possible she was confusing the Arbitration Agreement
with the employee handbook which contained those policies, and she agreed it
was possible.[5]  When asked whether it was possible that she
just did not remember Guzman explaining the Arbitration Agreement, Valenzuela
insisted that it was not possible.  She
also explained that she did not ask any questions about the Arbitration
Agreement because she did not know it existed.

Giving
the appropriate amount of deference to the trial court’s weighing of the
evidence, assessment of credibility, and resolution of conflicts in the
evidence, we conclude that the trial court could have believed Valenzuela’s
testimony that Guzman told her she was only going to translate the important
portions of the documents presented to Valenzuela.  As already noted, the trial court could have
reasonably found that Guzman did not discuss or explain the Arbitration
Agreement.  The court could have also
believed Valenzuela’s testimony that Guzman told her the Arbitration Agreement
was the company’s policies, such as the attendance policy.  From these findings, the court could have concluded
that Delfingen affirmatively misled Valenzuela about the nature and
significance of the Arbitration Agreement. 


Delfingen
insists it had no duty to explain the Arbitration Agreement to Valenzuela.  It cites the rule that absent a duty to
disclose, such as in a confidential or fiduciary relationship, an agreement
is not unconscionable or fraudulent merely because one party was not informed
as to the arbitration provisions.  See In re Green Tree Servicing LLC, 275
S.W.3d 592 (Tex.App.--Texarkana 2008, orig. proceeding).  But in this case, Delfingen knew that
Valenzuela did not understand English and it required her to attend an
orientation session during which a company representative told her that she was
going to translate the important parts of the documents.  Accepting as we must the trial court’s
finding that Guzman did not explain, discuss, or translate the Arbitration
Agreement, we recognize that the trial court could have also found that
Delfingen affirmatively misled Valenzuela about the importance of the
Agreement.  Based on the totality of the
circumstances, we conclude that Valenzuela carried her burden of proving that the
Arbitration Agreement is procedurally unconscionable.  Accordingly, we overrule the sole issue
presented on appeal and affirm the trial court’s order denying the motion to
compel arbitration.

 

February 6, 2013                                 _______________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

Antcliff, J., not participating











[1]  Valenzuela’s affidavit made in Spanish is also
attached to the response. 

 





[2]  The trial court was required to conduct an
evidentiary hearing to resolve the disputed material facts raised by the
affidavits.  See Jack B. Anglin Company,
Inc. v. Tipps, 842 S.W.2d 266, 269 (Tex. 1992); In re Big 8 Food Stores, Ltd., 166 S.W.3d 869, 875 (Tex.App.--El
Paso 2005, orig. proceeding).

 





[3]  According to Guzman, Delfingen usually
provided the packet to new employees a couple of days before the orientation
session, but she could not recall exactly when Valenzuela had been given the
packet prior to the orientation session. 






[4]  The parties agree that Texas contract law
applies to the Arbitration Agreement.





[5]  Valenzuela also had to sign an
acknowledgement that she had received a copy of the employee handbook.